IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEVON ENERGY CORPORATION and DEVON ENERGY PRODUCTION COMPANY, L.P., *Plaintiffs,* v. CHEVRON U.S.A., INC., *Defendant.* | CIV. ___ |

**PLAINTIFFS DEVON ENERGY CORPORATION AND DEVON ENERGY PRODUCTION COMPANY, L.P.'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THIS COURT:**

Plaintiffs, Devon Energy Corporation ("DEC") and Devon Energy Production Company, L.P. ("DEPCO") (DEC and DEPCO are collectively referred to as "**Devon**") file this Original Complaint against Defendant Chevron U.S.A., Inc. ("**Chevron**") and respectfully would show as follows:

**INTRODUCTION**

1. This dispute arises out of Chevron's refusal to honor valid indemnity and assumption of liability obligations for costs and liabilities that Devon now faces.

1

2. In 1996, DEPCO's corporate predecessor, Santa Fe Energy Resources, Inc. ("Santa Fe"), entered into a Conveyance and Contribution Agreement ("CCA") with Monterey Resources, Inc. ("Monterey"). Through the CCA, Santa Fe transferred all of its California property and assets (including its offshore property and assets) to Monterey. This deal was comprehensive in scope and intended to totally divest Santa Fe from all ownership, operations and obligations in California and the waters off its coast. As part of this total divestment, Monterey agreed to indemnify Santa Fe for all present and future liabilities arising both from Santa Fe's present and past ownership and operations in California and the waters off its coast.

3. Since then, Santa Fe's interest in the CCA passed to DEPCO as Santa Fe's corporate successor. Chevron has assumed Monterey's obligations under the CCA as Monterey's corporate successor.

4. On November 6, 2020, the U.S. Department of the Interior's Bureau of Safety and Environmental Enforcement ("BSEE") ordered DEC, DEPCO's ultimate parent company, to decommission certain wells, platforms and other facilities associated with a federal oil and gas lease off the coast of Santa Barbara, California that was once partially owned by Santa Fe. Santa Fe had conveyed its entire interest in this lease to a third party six years prior to entering into the CCA.

5. Even though the CCA requires Monterrey to indemnify Santa Fe and its successors for any and all costs and liabilities arising from Santa Fe's California offshore business activities undertaken up to the date of the CCA, Chevron, standing in Monterrey's shoes, refuses to fulfill those obligations

## PARTIES

**PLAINTIFFS**

6. Plaintiff DEC is a corporation organized under the laws of Delaware with its principal place of business in Oklahoma. DEC is Defendant DEPCO's ultimate parent company.

7. Plaintiff DEPCO is a limited partnership and therefore a citizen of the states in which its partners are citizens. *Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1080 (5th Cir. 2008).

8. DEPCO's two partners are DVN Operating Company, L.L.C. and Devon OEI Operating, L.L.C.

9. DVN Operating Company, L.L.C. is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Oklahoma. An LLC is a citizen of the states in which its members are citizens. *Harvey*, 542 F.3d at 1080.

10. DVN Operating Company, L.L.C.'s sole member is Devon OEI Operating, L.L.C.

11. Devon OEI Operating, L.L.C. is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Oklahoma. Devon OEI Operating, L.L.C.'s sole member is Devon OEI Holdings, L.L.C.

12. Devon OEI Holdings, L.L.C. is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Oklahoma. Devon OEI Holdings, L.L.C.'s sole member is Devon Energy Corporation (Oklahoma).

13. Devon Energy Corporation (Oklahoma) is a corporation organized under the laws of the State of Oklahoma with its principal place of business in Oklahoma.

14. Therefore, Plaintiff DEPCO is a citizen of Oklahoma for diversity jurisdiction purposes.

**DEFENDANT**

15. Defendant Chevron is a Pennsylvania corporation with its principal place of business in California. Accordingly, for diversity jurisdiction purposes, Chevron is a citizen of Pennsylvania and California.

16. In addition, Chevron maintains a significant presence in Houston, Texas and Houston serves as the headquarters for Chevron's North American upstream oil and gas business activities.

## JURISDICTION AND VENUE

17. Plaintiff DEC is a citizen of Oklahoma and Delaware. Plaintiff DEPCO is a citizen of Oklahoma by virtue of the citizenship of its partners. Defendant Chevron is a citizen of California and Pennsylvania. Accordingly, complete diversity exists between the parties.

18. The amount in controversy at issue in this case exceeds $75,000.

19. Because complete diversity exists and the amount in controversy requirement is met, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

20. Chevron has sufficient minimum contacts with Texas as to render the exercise of jurisdiction over Chevron by this Court permissible under traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980).

21. Because Devon's claims arise out of or relate to Chevron's contacts with the Texas forum this court may exercise personal jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017). The CCA, which is the contract giving rise to the rights, duties and obligations in this case was made and entered into in Houston, Texas. Chevron decision-making and deliberations regarding

whether to honor the indemnity obligation owed to Devon took place in Houston, Texas. These deliberations ultimately resulted in Chevron's decision to refuse to honor its contractual obligations, the action giving rise to Devon's claim for breach of contract.

22. Venue is proper in the Southern District of Texas because all or a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2), (d).

## FACTS

**SANTA FE AND LEASE 0166.**

23. This suit arises from contractual rights of assumption and indemnity held by DEPCO as successor to Santa Fe pursuant to the CCA.

24. In the late 1980s, a Santa Fe predecessor entity acquired a partial, non-operating working interest in a federal offshore oil and gas lease located off the coast of Santa Barbara, California and designated as OCS-P 0166 ("Lease 0166"). When Santa Fe's predecessor acquired its interest in Lease 1066, multiple wells had been drilled on the Lease and a number of offshore and onshore facilities had been constructed to support development of the Lease, including the Houchin and Hogan offshore platforms.

25. In 1990, Santa Fe, the Lease operator and all other interest owners sold their interests in Lease 0166 to Signal Hill Service, Inc. ("Signal Hill").

26. Through a Purchase and Sale Agreement, effective July 1, 1990 (the "Signal Hill PSA"), Signal Hill purchased all of Santa Fe's interest in Lease 0166.

27. In 1996, seeking to separate its California and non-California oil and gas interests and operations, Santa Fe spun-off its onshore and offshore California assets into Monterey, a new

entity formed for the purpose of assuming the assets and liabilities of Santa Fe's California oil and gas exploration and production business. Chevron is Monterey's corporate successor.

28. To effectuate the transfer of Santa Fe's California assets to Monterey and the assumption by Monterey of all liabilities and obligations related to Santa Fe's then current and historic California operations, Santa Fe and Monterey entered into the CCA.

29. Under the CCA, Santa Fe agreed to "convey and contribute all property and other assets to Monterey that are held by Santa Fe in its Western Division in the State of California." In exchange, Monterrey provided Santa Fe with a broad assumption of liability whereby Monterrey assumed and agreed to "pay, perform, and discharge the Assumed Liabilities, to the full extent that Santa Fe has been or would be obligated to pay, perform, and discharge the Assumed Liabilities."[1] Monterrey further agreed to indemnify Santa Fe for all costs and liabilities "relating to or arising out of" either the "Subject Assets" transferred or the "Assumed Liabilities."[2] The full indemnity obligation reads as follows:

> 3.4    Indemnification.
>
> (a)    Monterey's Indemnity. MONTEREY AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS SANTA FE AND ITS OFFICERS, DIRECTORS, EMPLOYEES, AND REPRESENTATIVES (COLLECTIVELY, "SANTA FE GROUP") FROM AND AGAINST ALL CLAIMS, COSTS, EXPENSES, LIABILITIES (INCLUDING ATTORNEYS' FEES, COURT COSTS, AND OTHER COSTS OF SUIT), LOSSES, DAMAGES, PENALTIES, AND FINES RELATING TO OR ARISING OUT OF THE SUBJECT ASSETS OR THE ASSUMED LIABILITIES, WHETHER ATTRIBUTABLE TO PERIODS BEFORE OR AFTER THE EFFECTIVE DATE, AND WHETHER OR NOT ATTRIBUTABLE TO THE SOLE, JOINT, AND/OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY, OR OTHER FAULT OF SANTA FE, ITS PREDECESSORS, AND ITS AND THEIR EMPLOYEES, REPRESENTATIVES, OFFICERS, OR DIRECTORS.

---

[1] Ex. 1, Sec. 2.2.
[2] Ex. 1, Sec. 3.4(a).

6

**CHEVRON MUST INDEMNIFY DEVON FOR COSTS AND LIABILITIES RELATING TO LEASE 0166 BECAUSE THEY RELATE TO AN ASSUMED LIABILITY**

30. The CCA required Monterrey to indemnify Santa Fe for two classes of liability: those relating to "Assumed Liabilities" and those relating to the "Subject Assets." The CCA defined "Assumed Liabilities" as all "liabilities, costs, expenses, fines, penalties, payments, and other obligations of Santa Fe relating to or arising out of the Subject Assets or the Business whether accrued, contingent, known or unknown, and whether or not reflected on the books and records of Santa Fe on the date of this Agreement," excluding certain specified liabilities not relevant to this dispute.

31. In turn, the CCA defined "the Business" extremely broadly as "all of the business activities now or heretofore conducted by Santa Fe its affiliates, and its and their predecessors in interest in the Business Area, including the oil and gas exploration development, and production business of Santa Fe and the businesses and operations identified in Plaintiffs' Exhibit 2 [Exhibit B of the CCA."].[3]

32. The "Business Area," was likewise defined broadly and consisted of "the State of California and all lands lying in federal or state waters seaward of the west coast of the State of California."[4]

33. In summation, the "Assumed Liabilities" included all liabilities "relating to or arising out of" "all of the business activities *now or heretofore* conducted" by Santa Fe in California or off its coast. Accordingly, any subsequent costs or liabilities arising from

---

[3] Ex. 1, Sec. 1.1 ("Business").
[4] Ex. 1, Sec. 1.1 ("Business Area").

7

governmental or regulatory action relating to Santa Fe's pre-1996 business activities off the California coast fell within the remit of "Assumed Liabilities."

34. Therefore, under Section 2.2 of the CCA Monterey agreed to assume and pay all costs relating to and arising out of Santa Fe's prior California business activities, including costs arising from its past ownership of an interest in Lease 0166, as well as to indemnify Santa Fe and its successors for those costs and liabilities under Sections 2.2 and 3.4(a) of the CCA. Accordingly, Chevron, as Monterey's successor, must indemnify Devon for any costs arising from Santa Fe's ownership of an interest in Lease 0166.

**CHEVRON MUST INDEMNIFY DEVON FOR COSTS AND LIABILITIES RELATING TO LEASE 0166 BECAUSE THEY RELATE TO A SUBJECT ASSET, NAMELY THE SIGNAL HILL PSA.**

35. The CCA also grants Devon another basis for indemnity from Chevron for the costs and liabilities relating to Lease 0166 under the CCA. This is because liabilities relating to Lease 0166 relate to a "Subject Asset" transferred pursuant to the CCA—namely the Signal Hill PSA.

36. The CCA defined "Subject Assets"[5] similarly broadly to include "all assets owned by Santa Fe in the Business Area or used or held for use by Santa Fe solely to conduct the Business, on the effective date…" As explained previously, the CCA defined both "the Business" and the "Business Area" extremely broadly. *Supra* ¶¶31–32.

37. Several categories of asset were explicitly included in the "Subject Assets" whose related liabilities would be covered by the indemnity. These explicitly included "[a]ll right, title, and interest of Santa Fe" in various contracts including "purchase and sale agreements" and "those contracts, agreements, and instruments set forth in Plaintiffs' Exhibit 1, [Exhibit E to the CCA]."[6] Among those agreements included in Plaintiffs' Exhibit 1 [Exhibit E to the CCA], and therefore

---

[5] Ex. 1, Sec. 1.1 ("Subject Asset").
[6] Ex. 1, Sec. 1.1 ("Subject Assets").

8

transferred to Monterey as part of the Subject Assets, was the Signal Hill PSA whereby Santa Fe assigned its interests in Lease 0166 to Signal Hill.[7]

38.     Simply put, the CCA transferred the rights and obligations under the Signal Hill PSA to Monterey. Therefore, Chevron, as Monterrey's successor, is required to indemnify Devon for any claims, losses, liabilities, and the like that arise out of or relate to the Signal Hill PSA.

**THE NOVEMBER 6, 2020 BSEE DECOMMISSIONING ORDER**

39.     As mentioned above, Signal Hill purchased Santa Fe's interest in Lease 0166 from Santa Fe in 1990. However, in October 2020, Signal Hill relinquished Lease 0166 and preemptively defaulted on its decommissioning obligations under the terms of the Lease and the Outer Continental Shelf Lands Act.

40.     After Signal Hill's default, BSEE issued decommissioning orders to several former interest holders in Lease 0166, claiming that, under applicable administrative regulations and in light of Signal Hill's default, those prior interest owners were responsible for decommissioning Lease 0166 and its related platforms, wells and facilities.

41.     By letter dated November 6, 2020 (the "Decommissioning Order"), BSEE ordered DEC, as the alleged successor of Santa Fe,[8] to undertake the costly decommissioning of Lease 0166 in light of Signal Hill's default.[9]

42.     In addition to DEC, BSEE sent similar decommissioning orders to ConocoPhillips Company and OXY U.S.A. Inc. as other prior interest holders in Lease 0166.

---

[7] Ex. E to Ex. 1 (CCA).
[8] BSEE erroneously directed its decommissioning order to DEC rather than DEPCO. Under BSEE's own theory of liability, it would be DEPCO, as Santa Fe's corporate successor, and not DEC that would be held liable.

[9] Ex. 2 (November 6 Letter).

43. DEC has appealed the Decommissioning Order to the United States Department of the Interior's Office of Hearings and Appeals Interior Board of Land Appeals disputing BSEE's determination that DEC has decommissioning liabilities in relation to Lease 0166.[10]

44. Devon has incurred considerable legal expenses in connection with the administrative appeal of the Decommissioning Order. These expenses already amount to over $75,000 and continue to rise. Should the administrative appeal fail, Devon will incur far greater costs associated with the maintenance, monitoring and ultimate decommissioning of the platforms, wells, and pipelines related to Lease 0166.

**CHEVRON'S REFUSAL TO ACKNOWLEDGE ITS RESPONSIBILITIES UNDER THE CCA**

45. The CCA explicitly provided that the Agreement "shall bind and inure to the benefit of the parties hereto and their respective successors and assigns."[11] Monterey's rights and obligations under the CCA ultimately came to rest with Defendant Chevron as Monterey's corporate successor.[12] Santa Fe's associated rights and obligations, on the other hand, ultimately came to rest with Devon.[13]

46. Any liability ultimately arising from BSEE's Decommissioning Order and the costs incurred by Devon in responding to the Decommissioning Order (a) arise from the pre-1996

---

[10] Ex. 3 (Devon's administrative appeal).

[11] Ex. 1, Sec. 3.15.
[12] After Monterrey was spun-off in July 1997 it changed its name to Texaco California, Inc on February 9, 1998. On June 28, 2002, Texaco California Inc. merged into Chevron U.S.A. Inc.

[13] Santa Fe Energy Resources, Inc. continued to exist as an independent entity after Monterey was spun-off until May 1999 when it merged with Snyder Oil Corporation, causing Santa Fe Energy Resources, Inc. to change its name to Santa Fe Snyder Corporation. On August 29, 2000, Santa Fe Snyder Corporation merged into Devon Merger Co. to form Devon SFS Operating, Inc. On October 31, 2002, Devon SFS Operating, Inc. merged into Devon Energy Production Company, L.P., which is an indirect wholly owned subsidiary of Devon Energy Corporation. Thus, Devon is the successor to the rights, duties, and obligations of Santa Fe Energy Resources, Inc., including the rights, duties and obligations set forth in the CCA.

California business activities of Santa Fe, making them Assumed Liabilities, and (b) are related to Santa Fe's 1990 Purchase and Sale Agreement with Signal Hill, a transferred Subject Asset.

47. Because the Decommissioning Order falls squarely within the scope of Chevron's indemnity obligations under the CCA, Devon sent Chevron a letter on December 2, 2020, informing Chevron of the Decommissioning Order and demanding that Chevron defend and indemnify Devon against all claims and liabilities associated with the Decommissioning Order and Santa Fe's interest in Lease 0166.

48. On December 23, 2020, Chevron responded to Devon's indemnity demand and denied any obligation to indemnify Devon in relation to the Decommissioning Order or Lease 0166.

49. Because of Chevron's unwillingness to honor its valid and continuing obligations under the CCA, this suit has followed.

## CAUSES OF ACTION

### I. BREACH OF CONTRACT

50. Devon incorporates by reference all allegations in this Complaint as if set out in full here.

51. A valid contract exists between Devon and Chevron by virtue of Devon being the successor of Santa Fe and Chevron being the successor of Monterey with respect to the 1996 CCA.

52. Devon performed its obligations under the parties' contract.

53. But, as set forth throughout this Complaint, Chevron has breached its contract with Devon by, among other things, refusing to undertake its duty to indemnify Devon in accordance with the contract between Chevron's predecessor, Monterey, and Devon's predecessor, Santa Fe, in connection with the November 6, 2020 Decommissioning Order and the resulting administrative appeal.

54. Defendant's breaches have directly and proximately caused Devon substantial damages.

## II.    DECLARATORY JUDGMENT

55. Plaintiffs incorporates by reference all allegations in the Complaint as if set out in full here.

56. Plaintiffs request a declaratory judgment to determine Chevron's obligation with respect to future costs and liabilities that may arise from the present dispute concerning decommissioning liability for Lease 0166 and Devon's attempts to defend against it, including:

   a. A declaration that any liabilities or costs associated with Devon's response to and defense against the liabilities, charges, penalties, and/or fines asserted in the Department of the Interior's November 6, 2020 Letter concerning the decommissioning of Oil and Gas Lease 0166 are to be assumed, paid, performed, and/or discharged by Defendant Chevron pursuant to Section 2.2 of the Contribution and Conveyance Agreement.

   b. A declaration that any liabilities, penalties, fines, and/or costs levied against Devon in connection with the BSEE's November 6, 2020 Letter concerning the decommissioning of Oil and Gas Lease OCS-P-0166 are to be assumed, paid, performed, and/or discharged by Defendant Chevron pursuant to Section 2.2 of the Contribution and Conveyance Agreement.

   c. A declaration that pursuant to Section 3.4(a) of the Contribution and Conveyance Agreement, Defendant Chevron has a present and continuing obligation to release, protect, defend, indemnify, and hold harmless Devon from and against all claims, costs, expenses, liabilities (including attorneys' fees,

court costs, and other costs of suit), losses, damages, penalties, and fines relating to or arising out of any action arising from Santa Fe's operation of or interest in Lease OCS-P 0166—whether in relation to Devon's present dispute with BSEE or any future dispute.

### DAMAGES & OTHER RELIEF REQUESTED

57. **Actual Damages.** As a result of Defendant's conduct as specified herein, Defendant is liable for the actual, direct, indirect, and consequential damage caused to Devon.

### MISCELLANEOUS

58. **Jury Demand.** Plaintiffs request a trial by jury and will pay the requested fee.

59. **Conditions Precedent.** All conditions precedent to Plaintiffs' claims for relief have been performed, have occurred, have been waived, or have otherwise been excused from performance.

### PRAYER

Plaintiffs Devon Energy Production Company, L.P. and Devon Energy Corporation respectfully request that Defendant be cited to appear and answer, and that upon final trial of this cause, they would have judgment on the grounds and causes of action as stated, for declaratory judgment, actual damages, including direct, indirect, incidental and consequential damages, exemplary damages, costs of court, and attorneys' fees, together with pre-judgment interest and post-judgment interest at the legal rate. Plaintiffs also seek all other and further relief, at law or equity, to which they may be entitled.

Dated: July 28, 2021

        Respectfully submitted,

**SCHIFFER HICKS JOHNSON, PLLC**

        Respectfully submitted,

*/s/ Logan E. Johnson*
Logan E. Johnson
State Bar No. 24013855
SD Tex. Fed. Bar No.
SCHIFFER HICKS JOHNSON, PLLC
700 Louisiana, Suite 2650
Houston, Texas 77002
Tel:  713-357-5150
Fax:  713-357-5160
ljohnson@shjlawfirm.com

***Attorney in charge for Plaintiffs Devon Energy Production Company, L.P. and Devon Energy Corporation***

<u>OF COUNSEL</u>

Varant Yegparian
Texas Bar No. 24070893
S.D. Tex. ID No. 2385654
Benjamin E. Cohen
Texas Bar No. 24116211
S.D. Tex. Bar. No. 3563681
SCHIFFER HICKS JOHNSON PLLC
700 Louisiana, Ste. 2650
Houston, Texas 77002
Tel. 713.357.5150
Fax. 713.357.5160
vyegparian@shjlawfirm.com
bcohen@shjlawfirm.com

*Certificate of Service*

  I certify that on July 28, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

                **/s/*Logan E. Johnson***
                Logan E. Johnson