## CONVEYANCE AND CONTRIBUTION AGREEMENT

This Conveyance and Contribution Agreement (this "Agreement"), dated effective 7:00 a.m., Pacific Time, November 1, 1996 (the "Effective Date"), is from Santa Fe Energy Resources, Inc., a Delaware corporation ("Santa Fe"), having its principal office at 1616 S. Voss Road, Houston, Texas 77057 to Monterey Resources, Inc., a Delaware corporation ("Monterey"), having its principal office at 5201 Truxtun Avenue, Suite No. 100, Bakersfield, California 93309. Santa Fe and Monterey are hereinafter sometimes referred to individually as a "Party" and collectively as the "Parties."

### RECITAL

Santa Fe is executing and delivering this Agreement to convey and contribute all property and other assets to Monterey that are held by Santa Fe in its Western Division in the State of California, other than certain excluded assets, as more fully described herein, and to perform certain other acts in connection with such conveyance and contribution. Monterey is executing this Agreement in performance of its obligations to assume certain liabilities of Santa Fe with respect to such property and assets and to undertake certain other obligations in connection with such conveyance and contribution.

NOW, THEREFORE, for valuable consideration, the Parties agree and grant as follows:

### ARTICLE 1

### DEFINITIONS

1.1    Defined Terms. The following definitions shall apply to the following terms when used in this Agreement:

"Agreement" is defined in the introductory paragraph of this instrument.

"Ancillary Agreements" means the Spin-Off Tax Indemnity Agreement, Corporate Services Agreement, Tax Allocation Agreement, and Registration Rights and Indemnification Agreement, all between Monterey and Santa Fe and dated of even date herewith.

"Assistance Costs" is defined in Section 3.11(d).

"Assumed Liabilities" means (a) the liabilities, obligations, and other matters of Santa Fe described in *Exhibit A*, and (b) all other liabilities, losses, costs, expenses, fines, penalties, payments, and other obligations of Santa Fe relating to or arising out of the Subject Assets or the

*Conveyance and Contribution Agreement*
*Page 1*



Business, whether accrued, contingent, known or unknown, and whether or not reflected on the books and records of Santa Fe on the date of this Agreement, excluding, however, (x) the Retained Liabilities and (y) obligations and liabilities of Santa Fe under the Ancillary Agreements.

"Business" means all of the business activities now or heretofore conducted by Santa Fe, its affiliates, and its and their predecessors in interest, in the Business Area, including the oil and gas exploration, development, and production business of Santa Fe and the businesses and operations identified in *Exhibit B*.

"Business Area" means the State of California and all lands lying in federal or state waters seaward of the west coast of the State of California.

"Excluded Assets" means the following assets:

(a)     The assets described in *Exhibit C*, and all rights, privileges and benefits pertaining to the assets described in *Exhibit C*;

(b)     All of Santa Fe's right, title and interest in and to all non-proprietary seismic, geological, geophysical and similar data and computer software related to the Subject Assets, to the extent Santa Fe is contractually prohibited by unaffiliated third parties from transferring such data and software;

(c)     All proprietary computer software (including, without limitation, tapes, data, and program documentation) and other intellectual property that is used in, or useful to, Santa Fe's retained businesses and operations;

(d)     Except as provided in Section 3.11, all of Santa Fe's rights under all policies or agreements of insurance or indemnity; and

(e)     All cash, proceeds, income, or revenues accruing with respect to the other Excluded Assets described above.

"Insurance Administration" means, for each Policy, the accounting for premiums, retrospectively-rated premiums, defense costs, indemnity payments, deductibles, and retentions as appropriate under each such Policy, and the distribution of Insurance Proceeds under each such Policy.

"Insurance Proceeds" means, for each Policy, those monies (i) received by an insured from an insurance carrier or (ii) paid by an insurance carrier on behalf of the insured, in either case, net of any applicable premium adjustment, retrospectively-rated premium, deductible, retention, cost or reserve paid or held by or for the benefit of such insured.

"Insured Claims" means, for a Policy, those claims, losses, liabilities, costs, and expenses that, individually or in the aggregate, are covered by such Policy, whether or not subject to deductibles, co-insurance, uncollectability or retrospectively-rated premium adjustments, but only to the extent that such claims, losses, liabilities, costs, and expenses are within the limits of such Policy.

"IPO Date" means the closing date for the initial public offering of the common stock of Monterey.

"New Credit Facility" means the note agreement described in item 4 in *Exhibit A*.

"Olinda Property" is defined in Section 3.14.

"Party" and "Parties" are defined in the introductory paragraph of this Agreement.

"Perpetuities Period" means that period of time commencing on the date of this Agreement and ending 21 years after the death of the last to die of all descendants of Joseph P. Kennedy, father of our late President, John F. Kennedy, who are living on the date of this Agreement.

"Person" means an individual, a corporation, a partnership, a trust, an unincorporated organization, a governmental agency, an association or any other entity.

"Policies" means insurance policies and contracts of indemnity described in *Exhibit G*.

"Restriction" is defined in Section 3.5.

"Retained Liabilities" means (a) the liabilities, obligations, and matters of Santa Fe described in *Exhibit H* and (b) all losses, costs, expenses, fines, penalties, payments, and other obligations related to the Excluded Assets.

"Santa Fe Group" is defined in Section 3.4(a).

"Santa Fe Liabilities" means all liabilities, costs, expenses, fines, penalties, payments, and obligations of Santa Fe, other than the Assumed Liabilities.

"Series G Notes" means the senior notes described in item 3 in *Exhibit A*.

"Specific Conveyances" is defined in Section 3.6.

"Spin-Off" means the sale, distribution, or other disposition of the remaining shares of common stock held by Santa Fe after the IPO Date in a single transaction or series of transactions.

"Spin-Off Date" means the date on which the Spin-Off first occurs.

"Subject Assets" means all of the assets owned by Santa Fe in the Business Area or used or held for use by Santa Fe solely to conduct the Business, on the Effective Date, including the following assets:

(a)     All right, title, and interest of Santa Fe in and to the plots, pieces, and parcels of land, surface estates, and fee interests of Santa Fe in the Business Area, including those described in *Exhibit D* (collectively, the "Lands");

(b)     All right, title, and interest of Santa Fe in and to (i) the estates created by the oil and gas leases (and the undivided interests therein), operating rights, mineral servitudes, and fee, mineral, royalty, and overriding interests of Santa Fe in the Business Area, including those described in, or created by the instruments described in, *Exhibit D* and (ii) the easements, permits, licenses, rights-of-way, surface leases, and other surface rights held by Santa Fe in the Business Area, including those described in, or created by the instruments described in, *Exhibit D* (collectively, the "Oil and Gas Interests");

(c)     All right, title, and interest of Santa Fe in all presently existing and valid unitization, pooling and communitization agreements, declarations and orders and production sharing agreements, and the properties covered and the units created thereby (including all units formed under orders, regulations, rules, or other official acts of any federal, state, or other governmental agency having jurisdiction), to the extent attributable to any of the Lands or the Oil and Gas Interests;

(d)     All right, title, and interest of Santa Fe in existing and valid oil, casinghead gas and gas sales, purchase, exchange, transportation and processing contracts, operating agreements. joint venture agreements, partnership agreements, participation agreements, exploration agreements, farmin and farmout agreements, acreage contribution agreements, bidding agreements, option agreements, purchase and sale agreements, advance payment agreements, and all other contracts to the extent attributable to any of the Lands or the Oil and Gas Interests or the Business, including those contracts, agreements, and instruments set forth on *Exhibit E*;

(e)     All right, title, and interest of Santa Fe in all improvements, wells, wellbores, casing, tubing, tanks, buildings, fixtures, compression and steam generation facilities, pipelines, gathering systems, lines and other appurtenances, easements and facilities, production platforms, drilling platforms, docks, shore facilities and bases, radio and microwave equipment (and associated licenses), and vessels to the extent located in, on or

*Conveyance and Contribution Agreement*
*Page 4*

under any of the Lands or Oil and Gas Interests or used or held for use as a part of the Business as presently conducted;

(f)     All right, title, and interest of Santa Fe in all seismic, geological, geophysical and similar data related to the Subject Assets, all lease files, land files, legal files, well files, gas and oil sales contract files, division order files, abstracts, title opinions, land surveys, computer software (including tapes, data and program documentation), and all other books, records, files, and accounting records to the extent attributable to or used in the exploration, development, maintenance, or operation of any of the Subject Assets described in subsections (a), (b), (c), (d), and (e) above or the Business (collectively, the "Records");

(g)     All of the following:

(i)     All right, title, and interest of Santa Fe in and to all inventories of oil, gas and other petroleum products, tubular goods, supplies and tools, in each case to the extent produced from or held for use on the Subject Assets described in subsections (a), (b), (c), (d), and (e) above; and

(ii)     All right, title, and interest of Santa Fe in all other personal property to the extent used or held for use in connection with the exploration, development, operation, or maintenance of the Subject Assets described in subsections (a), (b), (c), (d), and (e) above, including office furniture and equipment, computer hardware, leasehold interests therein;

(h)     All right, title, and interest of Santa Fe in and to all governmental permits, licenses, franchises, registrations, and similar rights relating to the Business or the Subject Assets;

(i)     All right, title, and interest of Santa Fe in and to all automobiles, trucks, trailers, other vehicles, and similar assets used in connection with the Business, including leasehold interests therein;

(j)     Cash, cash equivalents, accounts receivable, goodwill, claims, causes of action and choses in action relating to the Subject Assets and the Business;

(k)     All right, title, and interest of Santa Fe in and to the stock certificates, partnership interests, contract rights, and other intangible interests described in *Exhibit F*;

(l)     All of Santa Fe's right, title, and interest in and to any patents, trade secrets, copyrights, or other intellectual property rights that relate solely to the Subject Assets; and

(m)    All rights, benefits, privileges and appurtenances pertaining to any of the foregoing;

less and except, however, the Excluded Assets.

"Title Policy" is defined in Section 3.1.

"Uninsured Retentions" is defined in Section 3.11(f).

## ARTICLE 2

## CONTRIBUTION AND CONVEYANCE OF SUBJECT ASSETS
## TO MONTEREY

2.1    Contribution and Conveyance of Subject Assets.  Santa Fe hereby grants, conveys, assigns, transfers, contributes, and delivers unto Monterey, its successors and assigns, forever, all of its right, title, and interest in and to the Subject Assets, subject, however, to the terms and conditions stated in this Agreement.

TO HAVE AND TO HOLD the above described interests in the Subject Assets unto Monterey, its successors and assigns, forever, subject, however, to the terms and conditions stated in this Agreement.

2.2    Assumption of Certain Liabilities by Monterey.  Monterey hereby assumes and agrees to pay, perform, and discharge the Assumed Liabilities, to the full extent that Santa Fe has been or would be obligated to pay, perform, and discharge the Assumed Liabilities.

2.3    Reservation of Production Payment.  Santa Fe hereby reserves and retains unto Santa Fe, its successors and assigns, as a production payment, a variable undivided interest in and to certain of the Subject Assets, as more particularly provided in the Reservation of Production Payment Interest attached hereto as *Exhibit I*.

## ARTICLE 3

## OTHER PROVISIONS

3.1    Real Property Covered by Title Policies.  With respect to any Subject Asset that (a) constitutes real property or an interest in real property, and (b) is covered by a policy of title insurance that is in favor of, or otherwise provides protection in its capacity as owner to, Santa Fe (a "Title Policy"), the following provisions shall apply:

(i)      Santa Fe binds itself and its successors and assigns to warrant and forever defend all and singular such Subject Asset to Monterey, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof; subject, however, to the matters set forth in paragraph (ii) below.

(ii)      The contribution and conveyance of such Subject Asset made by Section 2.1 is made expressly subject to (A) those matters excluded or excepted from coverage under the applicable Title Policy and (B) all recorded and unrecorded liens, charges, encumbrances, contracts, agreements, instruments, obligations, defects and irregularities affecting such Subject Asset that have accrued or arisen since the effective date of the applicable Title Policy.

(iii)      The sole remedy for breach of the warranty contained in this Section 3.1 shall be recovery of damages limited to the amount, if any, recovered by Monterey or Santa Fe under the applicable Title Policy.

(iv)      Monterey hereby expressly waives and disclaims any remedies and damages, other than those provided for in paragraph (iii) above, that may be available under applicable law for breach of the warranty contained in this Section 3.1, including, without limitation, consequential damages, incidental damages, punitive damages, attorneys fees, and court costs.

(v)      Santa Fe and Monterey acknowledge that the warranty contained in this Section 3.1 would not have been granted had Santa Fe not also been able to limit the remedies available for breach of the warranty. Santa Fe and Monterey therefore adopt the following procedure for ensuring that their mutual intent with regard to such warranty be respected.  If a court having jurisdiction over a Subject Asset subject to this Section 3.1 should determine that the limitation and waiver of remedies provided for herein are, under applicable law with respect to such Subject Asset, unenforceable, then (A) the warranty provided for in this Section 3.1 shall automatically be waived, negated, and disclaimed for such Subject Asset; (B) such Subject Asset shall automatically be deemed to have been conveyed to Monterey subject to the matters set forth in Section 3.2 and in the manner described in Section 3.3; and (C) Monterey shall execute and deliver or cause to be delivered such instruments as may be necessary to evidence the effect of this paragraph (v).

3.2      Encumbrances.  Except as provided in Section 3.1, the contributions and conveyances made by Section 2.1 are made expressly subject to all recorded and unrecorded liens, charges, encumbrances, contracts, agreements, instruments, obligations, defects, and irregularities affecting the Subject Assets.

3.3     Disclaimer of Warranties; Subrogation.

(a)     No Warranty of Title.  Except as provided in Section 3.1, the contributions and conveyances made by Section 2.1 are made without warranty of title, express, implied or statutory, and without recourse even as to the return of the purchase price, but with full substitution and subrogation of Monterey, and all persons claiming by, through and under Monterey, to the extent assignable, in and to all covenants and warranties by Santa Fe's predecessors in title and with full subrogation of all rights accruing under the statutes of limitation or prescription under the laws of various states in which the Subject Assets are located and all rights of actions of warranty against all former owners of the Subject Assets.

(b)     Disclaimer.  Monterey and Santa Fe agree that, to the extent required by applicable law to be operative, the disclaimers of certain warranties contained in this paragraph are "conspicuous" disclaimers for the purposes of any applicable law, rule, or order.  Except as provided in Section 3.1, the Subject Assets are assigned to Monterey without recourse (even as to the return of the purchase price), covenant or warranty of any kind, express, implied, or statutory.  WITHOUT LIMITATION OF THE GENERALITY OF THE IMMEDIATELY PRECEDING SENTENCE, SANTA FE HEREBY EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OR WARRANTY, EXPRESSED, IMPLIED, AT COMMON LAW, BY STATUTE OR OTHERWISE, RELATING TO (A) THE CONDITION OF THE SUBJECT ASSETS (INCLUDING, WITHOUT LIMITATION, ANY IMPLIED OR EXPRESSED WARRANTY OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS), OR (B) ANY INFRINGEMENT BY SANTA FE OR ANY OF ITS AFFILIATES OF ANY PATENT OR PROPRIETARY RIGHT OF ANY THIRD PARTY; IT BEING THE INTENTION OF SANTA FE AND MONTEREY THAT THE SUBJECT ASSETS ARE TO BE CONVEYED IN THEIR PRESENT CONDITION AND STATE OF REPAIR.

(c)     No Implied Warranties.  Any covenants implied by statute or law by the use of the words "grant", "convey", "assign", "transfer", "contribute", or "deliver", or any other words used in this Agreement (except those in Section 3.1), are hereby expressly disclaimed, waived, and negated.

3.4     Indemnification.

(a)     Monterey's Indemnity.  MONTEREY AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS SANTA FE AND ITS OFFICERS, DIRECTORS, EMPLOYEES, AND REPRESENTATIVES (COLLECTIVELY, "SANTA FE GROUP") FROM AND AGAINST ALL CLAIMS, COSTS, EXPENSES, LIABILITIES (INCLUDING ATTORNEYS' FEES, COURT COSTS, AND OTHER COSTS OF SUIT), LOSSES, DAMAGES, PENALTIES, AND FINES RELATING TO OR ARISING OUT OF THE SUBJECT ASSETS OR THE ASSUMED LIABILITIES, WHETHER ATTRIBUTABLE TO

PERIODS BEFORE OR AFTER THE EFFECTIVE DATE, AND WHETHER OR NOT ATTRIBUTABLE TO THE SOLE, JOINT, AND/OR COMPARATIVE NEGLIGENCE. STRICT LIABILITY, OR OTHER FAULT OF SANTA FE, ITS PREDECESSORS, AND ITS AND THEIR EMPLOYEES, REPRESENTATIVES, OFFICERS, OR DIRECTORS.

(b)    Santa Fe's Indemnity. SANTA FE AGREES TO RELEASE. PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS MONTEREY AND ITS OFFICERS, DIRECTORS, EMPLOYEES, AND REPRESENTATIVES FROM AND AGAINST ALL CLAIMS, COSTS, EXPENSES, LIABILITIES (INCLUDING ATTORNEYS' FEES, COURT COSTS, AND OTHER COSTS OF SUIT), LOSSES, DAMAGES, PENALTIES, AND FINES RELATING TO OR ARISING OUT OF THE EXCLUDED ASSETS, THE RETAINED LIABILITIES, OR THE SANTA FE LIABILITIES, WHETHER ATTRIBUTABLE TO PERIODS BEFORE OR AFTER THE EFFECTIVE DATE, AND WHETHER OR NOT ATTRIBUTABLE TO THE SOLE, JOINT, AND/OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY, OR OTHER FAULT OF MONTEREY AND ITS EMPLOYEES, REPRESENTATIVES, OFFICERS, OR DIRECTORS.

3.5    Restrictions on Conveyance. Santa Fe and Monterey acknowledge that (a) there may exist certain prohibitions against the conveyance or assignment of certain of the Subject Assets without the consent of third parties (including governmental agencies); and (b) certain of the Subject Assets may be incapable of being conveyed or assigned to Monterey prior to the execution, acknowledgment, and/or delivery of Specific Conveyances. Both types of impediments to conveyance or assignment are referred to herein as a "Restriction." Any provisions of this Agreement to the contrary notwithstanding, the following provisions shall apply to all Subject Assets burdened by a Restriction:

(i)    The conveyance or assignment to Monterey shall not become effective unless and until such time as the Restriction is satisfied.

(ii)    Santa Fe and Monterey shall each use their reasonable efforts to cause the Restriction to be satisfied.

(iii)    When and if the Restriction is satisfied, the conveyance or assignment to Monterey shall become automatically effective as to such Subject Asset as of the date of this Agreement.

(iv)    If (A) any of the Subject Assets burdened by a Restriction constitutes real property or an interest in real property, and (B) such Restriction is not satisfied within the Perpetuities Period, then the conveyance or assignment to Monterey of such Subject Asset shall be null and void.

3.6     Further Assurances. Without further consideration, Santa Fe and Monterey agree to take all such further actions and execute, acknowledge, and deliver all such further documents that are necessary or useful in carrying out the purposes of this Agreement.  So long as not prohibited by applicable laws so to do:

(a)     Santa Fe agrees to execute, acknowledge, and deliver to Monterey and, if applicable, record in the official property records of the applicable jurisdiction, all such additional deeds, conveyances, assignments, bills of sale, motor vehicle titles, and other documents (the "Specific Conveyances"), and to do all such further acts and things as may be necessary more fully and effectively to grant, convey, assign, transfer, contribute, and deliver to Monterey the interests in the Subject Assets contributed and conveyed by this Agreement or intended so to be.  The Specific Conveyances (i) shall evidence and perfect the conveyance made by this Agreement and shall not constitute any additional conveyance of the Subject Assets or interests therein; (ii) are not intended to modify, and shall not modify, any of the terms, covenants and conditions herein set forth; and (iii) are not intended to create and shall not create any additional covenants or warranties of or by Santa Fe to Monterey.  To the extent that the Specific Conveyances purport to create any additional covenants or warranties, Monterey hereby expressly waives such additional covenants or warranties.

(b)     Santa Fe agrees to execute, acknowledge, and deliver to Monterey and, if applicable, record in the official property records of the applicable jurisdiction, substantially all of the Specific Conveyances within 120 days after the date of this Agreement.

(c)     Santa Fe represents to Monterey that all Specific Conveyances for Subject Assets that constitute real property or interests in real property shall conform as to form in all material respects with all applicable laws of the states in which such Subject Assets are located governing the conveyance of such assets, including all applicable recording, filing and registration laws and regulations.

(d)     Monterey agrees to execute and deliver or cause to be delivered such other instruments as may be reasonably required to assume and take responsibility more effectively for the Assumed Liabilities and the other obligations and liabilities that Monterey has assumed or undertaken pursuant to this Agreement.

3.7     Assets Intended to be Conveyed. Santa Fe and Monterey acknowledge that the assets intended to be conveyed by this Agreement are all of the assets and properties held by the Western Division of Santa Fe in the Business Area or used or held for use by Santa Fe solely to conduct the Business, on the Effective Date, other than the Excluded Assets.  If this Agreement erroneously fails to convey all such assets and properties, or erroneously conveys an asset other than such assets or properties, Santa Fe and Monterey shall execute such corrective documents and take such other actions as are necessary to correct the error.

3.8    Property Taxes and Transfer Fees.  All (i) sales, use, recording, and other similar property transfer fees and charges incurred in transferring the Subject Assets to Monterey and (ii) ad valorem and property taxes for the Subject Assets shall be the responsibility of and paid by Monterey.

3.9    Finance Matters.

(a)    Cash Management.  Monterey will establish its own cash management system which is to be separate and distinct from the cash management system maintained by Santa Fe, and such system will be operational prior to or shortly after the Effective Date.  Santa Fe further acknowledges and agrees that after Monterey's cash management system is established and operational, Santa Fe shall transfer to Monterey all funds, if any, in Santa Fe's cash management system attributable to the Subject Assets or the Business, which transfer shall be effected by wire transfer of immediately available funds to such account as Monterey may designate.  Santa Fe shall transfer such funds to Monterey upon notification from Monterey that its cash management system is operational together with wire transfer instructions.  Any funds received in Santa Fe's cash management system subsequent to such transfer that are attributable to the Business shall be promptly (but in no event more than 30 days after receipt) delivered to Monterey by Santa Fe, and any funds received in Monterey's cash management system subsequent to such transfer that are attributable to Santa Fe or its other subsidiaries shall be promptly (but in no event more than 30 days after receipt) delivered to Santa Fe by Monterey.  The Parties shall make appropriate adjustments for late deposits, checks returned for not sufficient funds and other post-Effective Date transactions that occur after the transfer as shall be reasonable under the circumstances consistent with the purpose and intent of this Agreement.

(b)    Settlement of Intercompany Accounts.  The Parties agree that the net balance of all intercompany accounts owed by Santa Fe to Monterey, or owed by Monterey to Santa Fe, in each case as of the Effective Date, shall be paid by Santa Fe or Monterey, as appropriate, as promptly as reasonably practicable after the Effective Date (but in no event more than 30 days after receipt).  All transactions contemplated in this Section 3.9 shall be subject to audit by the Parties, and any dispute with respect to any such transactions thereunder shall be resolved by Price Waterhouse LLP (or another nationally recognized accounting firm acceptable to the Parties) whose decision shall be final and nonappealable.

3.11    Insurance Matters.

(a)    Existing Surety Bonds.  Santa Fe shall continue to maintain, and not cancel, those surety and indemnity bonds currently maintained by or for the benefit of the Subject Assets until the earlier of (i) the expiration or renewal date therefor next following the IPO Date or (ii) one year after the IPO Date.  Santa Fe shall give Monterey at least 15 days' advance notice of the expiration or renewal of each such surety and indemnity bond.  If Monterey decides not to renew any bond, Monterey agrees to provide appropriate documentation to Santa Fe to allow Santa Fe to cancel

such bonds. Monterey shall indemnify and hold harmless Santa Fe from and against any expense or loss incurred by Santa Fe after the IPO Date as a result of maintaining such surety bonds. After the IPO Date, Monterey shall be responsible for obtaining its own surety and indemnity bonds as may be necessary for its operations, subject to the preceding sentences with respect to existing bonds. Santa Fe shall have the right at any time or from time to time, in Santa Fe's sole discretion, to require that Monterey provide collateral security in favor of Santa Fe of the same kind that any surety providing a bond or indemnity agreement for the benefit of Monterey advised Santa Fe it will or might require under any applicable indemnity agreement or bond.

(b)    Policies and Rights Prior to Spin-Off.  Prior to the Spin-Off Date, Monterey shall be entitled to any and all rights of an insured party under each of the Policies, specifically including rights of indemnity and the right to be defended by or at the expense of the insurer, with respect to all injuries, losses, liabilities, damages, and expenses incurred or claimed to have been incurred prior to the Spin-Off Date (to the extent covered) by any party in connection with the conduct of the Business. Nothing in this clause shall be deemed to constitute (or to reflect) the assignment of the Policies, or any of them, to Monterey. From and after the Spin-Off Date (or earlier upon mutual agreement), Monterey agrees that it shall be responsible for obtaining and maintaining, on such terms as Monterey determines to be appropriate, insurance policies for injuries, claims, liabilities, losses, costs, and expenses arising with respect to occurrences after the Spin-Off Date.

(c)    Administration and Costs.  Santa Fe shall be responsible for (i) the Insurance Administration of the Policies, (ii) the processing and management of claims under the Policies, and (iii) the collection and distribution of Insurance Proceeds under the Policies, except, in each case, as provided in Section 3.11(d) below. Monterey shall be required to give notice of any claim or potential claim to Santa Fe in sufficient time for Santa Fe to notify the insurance carrier of the Policy. For the period prior to the Spin-Off Date, Monterey shall pay Santa Fe the portion of the cost of the Policies that is properly allocable to the Assumed Liabilities and the Subject Assets. Monterey shall pay such amounts within 15 days of receiving Santa Fe's invoice.

(d)    Claims After the Spin-Off Date.  The Policies will automatically cease and terminate with respect to the Business on the Spin-Off Date for any occurrences after the Spin-Off Date. For each Insured Claim asserted or arising after the Spin-Off Date that relates to occurrences prior to the Spin-Off Date in connection with the Business, Santa Fe shall at the time such claim is asserted be deemed to transfer, without need of further documentation, to Monterey any and all rights of an insured party under the applicable Policy with respect to such Insured Claim, specifically including rights of indemnity and the right to be defended by or at the expense of the insurer. The preceding sentence shall not, however, be deemed to constitute (or to reflect) the assignment of any of the Policies to Monterey. Monterey shall have the right to assert a claim under a Policy relating to an occurrence prior to the Spin-Off Date in accordance with the terms of such Policy. Santa Fe agrees not to amend, cancel, or terminate any Policy in a manner that materially and adversely affects Monterey's right to assert a claim thereunder that relates to an occurrence prior to the Spin-Off Date. Additionally, after the Spin-Off Date, Santa Fe shall, to the extent reasonably practicable,

assist Monterey in the recovery of any amounts to which Monterey is validly entitled under any of the Policies on account of Insured Claims. Notwithstanding the foregoing, Santa Fe does not assume any liability and shall not incur any liability to Monterey or its affiliates in agreeing to transfer its rights under any Policy or to provide such action or assistance and shall promptly be advanced, or reimbursed, if applicable, for all reasonable costs and expenses incurred after the Spin-Off Date in transferring such rights or in providing such action or assistance requested by Monterey ("Assistance Costs"). Assistance Costs include employee salaries and out-of-pocket expenses, attorneys' fees, adjustor fees, surveyor fees, brokerage fees, travel expenses, communication expenses and other similar costs and expenses incurred.

(e) <u>Insurance Application to Assumed Liabilities</u>. If and to the extent Santa Fe receives Insurance Proceeds that relate to Assumed Liabilities asserted against any member of the Santa Fe Group, Santa Fe may directly apply such Insurance Proceeds to such Assumed Liabilities without distribution to Monterey. If and to the extent Santa Fe is paid by, or reimbursed from, the Policies for such Assumed Liabilities, Monterey shall be relieved of its indemnification obligations that would otherwise apply under Sections 3.4(a) for such Assumed Liabilities, provided, that, this subsection (e) shall not apply to any amounts attributable to Uninsured Retentions or Assistance Costs for which Monterey shall remain obligated to pay in full.

(f) <u>Uninsured Retentions</u>. Monterey recognizes that the Policies are subject to various deductibles, self-insured retentions, retentions under retrospective premium rating plans and similar charges, which may not be reinsured by or collectible from commercial insurance markets. All amounts incurred or payable by Santa Fe or its affiliates, attributable to such deductibles, retentions, plans or non-reinsured or non-collectible insurance, after giving effect to maximum premium provisions and stop loss provisions on a first come first served basis ("Uninsured Retentions") shall not be considered as insured losses or claims, or insurance proceeds, within the meaning of this Agreement and notwithstanding anything to the contrary shall be and remain the obligation of Monterey to the extent arising out of the Subject Assets or the Assumed Liabilities. Monterey shall reimburse Santa Fe for all amounts incurred or paid by Santa Fe or its affiliates for such Uninsured Retentions to the extent arising out of Assumed Liabilities.

3.12 <u>Delivery of Release</u>. At the closing of the initial public offering of Monterey, Monterey shall execute and deliver to Santa Fe a release (in a form acceptable to Santa Fe) that releases any and all rights Monterey may have to seek contribution or reimbursement for amounts borrowed by Santa Fe under the $75 million Credit Facility between Santa Fe and Monterey, as borrowers, and The Chase Manhattan Bank, as agent for the lenders that are parties to the Credit Facility.

3.13 <u>Transaction Costs</u>. Monterey shall pay and reimburse Santa Fe for all out-of-pocket costs and expenses incurred by Santa Fe in connection with the conveyance of the Subject Assets to Monterey, the initial public offering of Monterey, and the Spin-Off, including those incurred for (i) the consent solicitation of the holders of Santa Fe's 11% Senior Subordinated

Debentures due 2004 in connection with certain amendments to such debentures, (ii) the exchange of the Series G Notes for the New Credit Facility, and (iii) pursuit by Santa Fe of a ruling from the Internal Revenue Service regarding the tax-free nature of the Spin-Off, including, in each case, all legal, accounting, printing, underwriting, engraving, consulting, and other third party charges and expenses.

        3.14    Olinda Property.

        (a)    Purchase and Sale Agreement. Santa Fe is a party to that certain Agreement for Purchase and Sale of Real Property and Escrow Instructions with CWC, Inc., a California corporation, dba SUNCAL COMPANIES ("Buyer"), dated August 19, 1996, as amended (the "Olinda Purchase Agreement"), pursuant to which Buyer agreed to buy and Santa Fe agreed to sell certain real property and other rights and interests in Orange County, California (the "Olinda Property") as more particularly described in the Olinda Purchase Agreement.

        (b)    Transfer of Notes to Monterey. If the Close of Escrow (as defined in the Olinda Purchase Agreement) occurs on or before August 1, 1997, Monterey shall purchase, and Santa Fe shall sell, any promissory notes given by the Buyer as consideration for purchase of the Olinda Property (collectively, the "Notes") along with all liens, security interests, and other rights securing repayment of the Notes by Buyer (collectively, the "Property Liens"), for a purchase price equal to the aggregate face value of the Notes (the "Note Purchase Price") if the total face value of the Notes does not exceed $10,000,000. The closing of the purchase and sale of the Notes shall occur in the offices of Santa Fe within 10 business days of the date of the Close of Escrow. At the closing, Monterey shall wire transfer the Note Purchase Price to Santa Fe in immediately available funds and assume all obligations in connection with the Olinda Property and the Notes, the Property Liens, and Santa Fe's remaining rights under the Olinda Purchase Agreement shall be assigned to Monterey without any warranties or representations by Santa Fe. On and after such closing, the defined term "Subject Assets" shall be deemed to include, and the defined term "Excluded Assets" shall be deemed to exclude, the Olinda Property for all purposes under this Agreement.

        (c)    Transfer of Property to Monterey. If the Close of Escrow fails to occur on or before August 1, 1997, Monterey shall purchase, and Santa Fe shall sell, the Olinda Property for a purchase price of $23,000,000 (the "Property Purchase Price") on the terms provided in this Agreement. The closing of the purchase and sale of the Olinda Property shall occur in the offices of Santa Fe on or before August 15, 1997. At the closing, Monterey shall wire transfer the Property Purchase Price to Santa Fe in immediately available funds and the Olinda Property shall be conveyed and transferred to Monterey by a Specific Conveyance as provided herein and Santa Fe's remaining rights under the Olinda Purchase Agreement shall be assigned to Monterey. On and after such closing, the defined term "Subject Assets" shall be deemed to include, and the defined term "Excluded Assets" shall be deemed to exclude, the Olinda Property for all purposes under this Agreement.

3.15    Successors and Assigns.  This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.  Nothing in this Agreement is intended to confer upon any other person any benefits, rights, or remedies.

3.16    Articles, Sections and Exhibits.  Except to the extent otherwise stated in this Agreement, references to "Articles" and "Sections" are to Articles and Sections of this Agreement, and references to "Exhibits" are to Exhibits attached to this Agreement, which are made parts hereof for all purposes.

3.17    Governing Law.  THIS AGREEMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES HERETO SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS THAT MIGHT REQUIRE OR PERMIT THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION.

3.18    Deed; Bill of Sale; Assignment.  To the extent required by applicable law, this Agreement shall also constitute a "deed," "bill of sale" or "assignment" of the Subject Assets.

3.19    Construction of Agreement.  In construing this Agreement, the following principles shall be followed:

(i)    no consideration shall be given to the captions of the articles, sections, subsections, or clauses, which are inserted for convenience in locating the provisions of this Agreement and not as an aid in its construction;

(ii)    no consideration shall be given to the fact or presumption that one party had a greater or lesser hand in drafting this Agreement;

(iii)    the word "includes" and its syntactical variants means "includes, but is not limited to" and corresponding syntactical variant expressions;

(iv)    a defined term has its defined meaning throughout this Agreement and the exhibits, regardless of whether it appears before or after the place in this Agreement or the exhibits where it is defined;

(v)    the plural shall be deemed to include the singular, and vice versa; and

(vi)    each exhibit, attachment, and schedule to this Agreement is a part of this Agreement, but if there is any conflict or inconsistency between the main body of this Agreement and any exhibit, attachment, or schedule, the provisions of the main body of this Agreement shall prevail.

3.20    Counterparts.   This Agreement may be executed in any number of counterparts, and each counterpart hereof shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

3.21    Survival.   This Agreement shall survive the execution and delivery of the Specific Conveyances.

3.22    Integrated Agreement.  This Agreement is the final, complete, and exclusive expression of the agreements of the Parties with respect to the matters covered by this Agreement.

3.23    Severability.  If any provision of this Agreement is held to be unenforceable or invalid, the remaining provisions of this Agreement shall remain in full force and effect.

EXECUTED by the Parties as of the Effective Date.

*Santa Fe*:

SANTA FE ENERGY RESOURCES, INC.

By:_____
Name:_ J. L. Bridwell_____
Title:__ Sr. Vice President, Exploration

*Monterey*:

MONTEREY RESOURCES, INC.

By:_____
Name:_ R. Graham Whaling____
Title:__ Chief Executive Officer

*Exhibit E*

**Contracts**

1.    *Olinda Property*.

(a) *Olinda Purchase Agreement*. All rights and obligations of Santa Fe under the Olinda Purchase Agreement (as defined in Section 3.14 of this Agreement), except as follows:

(i)    Santa Fe is not assigning, and is retaining, the right to receive payment of the Purchase Price and all deposits under the Olinda Purchase Agreement, and the Mitigation Payments as defined in Section 12.2.1 of the Olinda Purchase Agreement, other than Reimbursement Monies (as defined in the Olinda Purchase Agreement), which will be paid to Monterey under the Notes to be purchased by Monterey as provided in Section 3.14 of this Agreement.

(ii)    Since Santa Fe shall retain title to the Property (as defined in the Olinda Purchase Agreement), Monterey shall not assume the obligation to convey the Property to the Buyer or to perform other similar obligations of Santa Fe under the Olinda Purchase Agreement that only Santa Fe, as owner of the Property, can perform.

(b) School Impact Mitigation Agreement between Santa Fe and Brea Olinda School District, dated September 1, 1995.

(c) School Site Transfer Agreement between Santa Fe and Brea Olinda School District, dated September 1. 1995.

(d) Development Agreement between Santa Fe and the City of Brea, dated October 15, 1995.

(e) Indemnity and Defense Agreement between Santa Fe and the City of Brea. dated October 15. 1995.

2.    *Other Contracts*. The contracts, agreements, and other instruments listed in the schedules attached behind this page.

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | | AREA/PROSPECT NAME | CONTR # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|---|
| CA. | KERN | BELRIDGE - 252; BELRIDGE SO - CA-252 | 2689-C  2689-D (CA) | 07/31/89 | BELRIDGE WATER STORAGE DISTRICT AND MISSION OPERATING PARTNERSHIP, L.P. | AGREEMENT ASSUMING AGMT FOR OPERATION OF INDUSTRIAL WATER TRANSPORATION SYSTEM |
| CA. | KERN | BELRIDGE - 252; BELRIDGE SO - CA-252 | 2689-G | 07/29/83 | UNION OIL COMPANY OF CALIFORNIA AND PETRO-LEWIS CORPORATION | AGREEMENT re Union entering agrmt. to supply water |
| CA KERN | | BELRIDGE - 604 BELRIDGE SO - CA-252 | 2689-E | 11/04/67 | UNION OIL COMPANY  OF CALIFORNIA TO SANTA FE ENERGY COMPANY | REVOCABLE LICENSE TO USE SURPLUS PRODUCED WATER |
| CA KERN | | BELRIDGE - 604 BELRIDGE SO - CA-252 | 2689-F | 01/02/89 EFF 01/01/90 AMEND 05/13/91 | BELRIDGE WATER STORAGE DISTRICT AND SHELL CALIFORNIA PRODUCTION INC., ET AL | INDUSTRIAL WATER SUPPLY CONTRACT |
| CA KERN | | BELRIDGE - 604 BELRIDGE SO - CA-252 | 2689-H | 10/01/83 | GETTY OIL COMPANY AND PETRO-LEWIS CORPORATION | NOX MONITORING |
| CA KERN | | BELRIDGE - 604 BELRIDGE SO - CA-252 | 2689-L | 02/05/91 | BELRIDGE WATER STORAGE DISTRICT AND SOUTH BELRIDGE LIMITED PARTNERSHIP BY SANTA FE ENERGY RESOURCES, INC. | AGREEMENT ASSUMING INDUSTRIAL WATER SUPPLY CONTRACT & RELATED CONTRACTS |
| CA KERN | | BELRIDGE - 604 BELRIDGE SO - CA-252 — | 2689-O | 02/05/85 | SHELL CALIFORNIA PRODUCTION INC., AND PACIFIC GAS AND ELECTRIC COMPANY AND PETRO-LEWIS, ET AL | METERING AGMT |
| CA KERN | | BELRIDGE - 604 BELRIDGE SO - CA-252 | 617703-F | 10/06/80 | UNION OIL COMPANY OF CALIFORNIA AND PETRO-LEWIS CORPORATION | GAS PROCESSING  AGREEMENT |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000061  CA-LEG. | 7/21/87 | SANTA FE ENERGY COMPANY, ET AL | ENERGY POWER PURCHASE AGREEMENT (AS AVAIL. CAPACITY ON ENERGY POWER PURCHASE AGREEMENT) |
| CA. | KERN | BELRIDGE, S. | PR-05-01  CA-LEG. | 10/19/95 | FEDERAL COMMUNICATIONS COMMISSION AND SANTA FE ENERGY RESOURCES, INC. | FCC LICENSE AGREEMENT # 9508507624 |
| CA. | KERN | BELRIDGE, S. | PR-05-01  CA-LEG. | 11/7/85 | FEDERAL COMMUNICATIONS COMMISSION AND SANTA FE ENERGY RESOURCES, INC. | FCC LICENSE AGREEMENT #95097119807 |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000050  CA-LEG. | 4/21/87 | SANTA FE ENERGY COMPANY, BELRIDGE COGENERATION PARTNERS, LTD., BY UNIVERSITY COGENERATIONS, INC., GENERAL PARTNER (BCPL) | LETTER OF AGREEMENT |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | 8/28/85 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INSTALLATION  AGREEMENT FOR ALLOCATION OF SPECIAL FACILITIES |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | 8/28/95 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INSTALLATION  AGREEMENT FOR ALLOCATION OF SPECIAL FACILITIES - |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | ALLOCATION OF SPECIAL FACILITIES |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | 8/28/87 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | ASSIGNMENT AGREEMENT |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | 8/28/95 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | ELECTRIC SERVICE AGREEMENT General Service - Time Metered |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | 9/18/86 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | ELECTRIC SERVICE AGREEMENT General Service - Time Metered |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | 12/21/89 & 9/22/87 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE; SUPPLEMENTAL AGREEMENT; ELECTRIC SERVICE AGREEMENT; General Service - time Metered - update. |
| CA. | KERN | BELRIDGE, S. | PR-02-00-000038  CA-LEG. | 8/28/87 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE - SUPPLEMENTAL AGREEMENT for Optional Curtailment of Interruptible electric service |
| CA. | KERN | BELRIDGE, S | PR-02-00-000038  CA-LEG. | 9/18/86 | PACIFIC GAS & ELECTRIC COMPANY AND PETRO LEWIS | INTERRUPTIBLE ELECTRIC SERVICE; SUPPLEMENTAL AGREEMENT for Optional Curtailable or Interruptible Electric Service Rate Schedule A-21 and A-22 |
| CA. | KERN | BELRIDGE, S | PR-02-00-000038  CA-LEG. | 9/22/87 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE; SUPPLEMENTAL AGRMT. for Optional Curtailable or Interruptible Elec Service |
| CA. | KERN | BELRIDGE, S | CA 4160  CA-LAND | 10/31/90 | THE PRUDENTIAL INSURANCE CO. OF AMERICA AND SANTA FE ENERGY RESOURCES, INC. | SOUTH BELRIDGE LIMITED PARTNERSHIP |
| CA. | KERN | BELRIDGE, S | PR-02  CA-LEG. | 7/1/94 | BELRIDGE WATER STORAGE DISTRICT AND SHELL OIL COMPANY, ET AL | WATER TRANSPORTATION - DESIGN AND CONSTRUCTION AGREEMENT |
| CA. | KERN | BELRIDGE, S. (PATRINO FEE) | PR-02-00-000038  CA-LEG. | 8/25/86 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE - SUPPLEMENTAL AGREEMENT for Optional Curtailment of Interruptible electric service |
| CA. | KERN | BELRIDGE, S./MIDWAY | PR-02  CA-LEG. | 10/17/91 | WEST KERN WATER DISTRICT AND SANTA FE ENERGY RESOURCES, INC. | WATER SERVICE - Memorandum of Understanding |
| | | BUENA VISTA | PR-02-00-000007  CA-LEG. | | | BV WATER STORAGE AGREEMENT |
| CA. FRESNO | | COALINGA | PR-02-00-000031  CA-LEG. | 8/23/88 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE; SUPPLEMENTAL AGREEMENT |
| CA. FRESNO | | COALINGA | SFER 0388  CA-LEG. | 9/13/95 | CHEVRON USA INC. AND SANTA FE ENERGY RESOURCES, INC. | POWER PURCHASE AGREEMENT |
| CA FRESNO | | COALINGA - 611 COALINGA WEST - CA-121 | 617700-B | 08/22/83 | SHELL CALIFORNIA PRODUCTION INC. (NOW CHEVRON) AND THE SUPERIOR OIL COMPANY (NOW SFER) | LICENSE TO DISPOSE OF WASTE WATER |
| CA FRESNO | | COALINGA - 611 COALINGA WEST - CA-121 | 617704 | 01/09/67 EFF 01/01/87 | SANTA FE ENERGY CO. AND CHEVRON USA INC | FUEL SUBSTITUTION AGMT |

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT. # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA FRESNO | COALINGA - 811 COALINGA WEST - CA-121 | 617705 | 01/06/87 EFF 01/01/87; ACCPT'D 1/27/87 | SANTA FE ENERGY CO. AND CHEVRON USA INC | FUEL SUBSTITUTION AGMT |
| CA FRESNO | COALINGA - 811 COALINGA WEST - CA-121 | 4591-A | 07/12/91 | COALINGA COGENERATION CO. AND SANTA FE ENERGY RESOURCES, INC. | STEAM PURCHASE & SALE AGMT. |
| CA FRESNO | COALINGA - 811 COALINGA WEST - CA-121 | 4591-B | 07/12/91 | COALINGA COGENERATION CO. AND SANTA FE ENERGY RESOURCES, INC. | FEEDWATER SUPPLY AGMT. |
| CA FRESNO | COALINGA - 811 COALINGA WEST - CA-121 | 4591-C | 07/12/91 | SANTA FE ENERGY RESOURCES, INC., SELLER, AND COALINGA COGENERATION COMPANY, BUYER | AGRMT. FOR PURCHASE & SALE OF EMISSION OFFSETS |
| CA FRESNO | COALINGA - 811 COALINGA WEST - CA-121 | 4591-E; (CA file 04959-A) | 08/25/95 | COALINGA COGENERATION CO. AND SANTA FE ENERGY RESOURCES, INC. | WATER FILTRATION & SOFTENING |
| CA FRESNO | COALINGA - 811 COALINGA WEST - CA-121 | 4941-A | 04/25/95 EFF 05/01/95 | SANTA FE ENERGY RESOURCES, INC. AND CHEVRON USA PRODUCTION CO. | COALINGA WATER SOFTENING AGMT. |
| CA FRESNO | COALINGA - 811 COALINGA WEST - CA-121 | 4959 | 08/01/94 | SANTA FE ENERGY RESOURCES, INC. AND CENTRAL CALIFORNIA OIL CO. | SURPLUS WATER AGMT |
| CA. KERN | KERN FRONT | PR-05-01 CA LEG. | 8/1/95 | FEDERAL COMMUNICATIONS COMMISSION AND SANTA FE ENERGY RESOURCES, INC. | FCC LICENSE AGREEMENT #9505R85489 |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | not filled out | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | GAS SERVICE AS SERVICE AGREEMENT - NATURAL |
| CA. KERN | KERN RIVER | PR-21 Operations CA-LEG. | | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | AGREEMENT for maximum demand adjustment for energy efficiency measures |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | 7/19/96 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | EASEMENT DEED |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | 5/26/96 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | ABANDONMENT of 4 dist poles for est of SF KR oilfield transmission |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | 6/15/94 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | AGREEMENT COVERING POLE CONTACTS |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | 3/5/96 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | CONTACT PERMIT |
| CA. KERN | KERN RIVER | PR-03-00- 000033 CA- LEG. | 5/8/83, Eff 9/1/83 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | NATURAL GAS SERVICE AGREEMENT |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE - SUPPLEMENTAL AGREEMEN for Optional Non Firm Elec Service |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | 8/22/89 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE - SUPPLEMENTAL AGREEMENT for Optional Curtailment of Interruptible electric service |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | 6/21/96 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPUTIBLE ELECTRIC SERVICE; SUPPLEMENTAL AGREEMENT for Optional Non-Firm Elec Service |
| CA. KERN | KERN RIVER | PR-02-00- 000033 CA- LEG. | 7/22/96 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | TRANSMISSION LEAD OPERATING AGREEMENT |
| CA. KERN | KERN RIVER | PR-02-00- 000040 CA- LEG. | 10/12/87 | SANTA FE ENERGY COMPANY TO SHELL WESTERN E&P INC. | RIGHT-OF-WAY AGREEMENT |
| CA. KERN | KERN RIVER | PR-42 CA- LEG. | 5/10/96 | CHEVRON USA, INC. AND SANTA FE ENERGY RESOURCES, INC. | SHARED FACILITIES AGREEMENT |
| CA. KERN | KERN RIVER (MAY PERTAIN TO OTHER FIELDS) | PR-02 CA- LEG. | 8/14/92 | MOJAVE PIPELINE AND SANTA FE ENERGY RESOURCES, INC., ET AL | SECURITY AGREEMENT; CONSENT AGREEMENT; CONSENT TO SECURITY AGREEMENT |
| CA KERN | KERN RIVER - 822 KERN RIVER - CA-106 | 617548 | 07/13/87 | TENNECO WEST, INC. AND SANTA FE ENERGY COMPANY | PRODUCED WATER DISPOSAL LICENSE AGREEMENT |
| CA. KERN | MIDWAY | PR-02-00- 000048 CA- LEG. | 2/9/83 | TRIGON RESOURCES, INC. (SELLER) AND SANTA FE ENERGY RESOURCES (BUYER) | |
| CA. KERN | MIDWAY | PR-05-01 CA LEG. | 10/13/93 | FEDERAL COMMUNICATIONS COMMISSION AND SANTA FE ENERGY RESOURCES, INC. | FCC LICENSE AGREEMENT #008585-350 |
| CA. KERN | MIDWAY | PR-05-01 CA LEG. | 5/14/92 | FEDERAL COMMUNICATIONS COMMISSION AND SANTA FE ENERGY RESOURCES, INC. | FCC LICENSE AGREEMENT #9203338816 |
| CA. FRESNO | MIDWAY | 006 CA- LEG. | 12/1/82 | TEXACO, INC., BEN M. FITZGERALD, ET UX AND SANTA FE ENERGY COMPANY | FUEL SUBSTITUTION AGREEMENT (Amber Lease) as amd 12/21/89 |
| CA. KERN | MIDWAY | PR-02-00- 000034 CA- LEG. | 9/11/88 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | ELECTRIC SERVICE AGREEMENT General Service - Time Metered |
| CA. KERN | MIDWAY | PR-02-00- 000034 CA- LEG. | | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | INTERRUPTIBLE ELECTRIC SERVICE - SUPPLEMENTAL AGREEMENT for Optional Curtailment of interruptible electric service |
| CA. KERN | MIDWAY | PR-02-02- 000028 CA- LEG. | 1/22/90 | ORYX ENERGY CO. AND SANTA FE ENERGY RESOURCES, INC. | POWER POLE CO-OP AGREEMENT |
| CA. KERN | MIDWAY | PR-02-00- 000017 CA- LEG. | 7/10/92 | N. H. WHITTIER AND SANTA FE ENERGY RESOURCES, INC. (ASSIGNED TO MCFARLAND ENERGY) | PRODUCED WATER AGREEMENT |
| CA. KERN | MIDWAY | PR-02-00- 000018 CA- LEG. | 7/10/92 | MCFARLAND ENERGY CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | PRODUCED WATER AGREEMENT |
| CA. KERN | MIDWAY | PR-02-00- 000042 CA- LEG. | 5/6/88 | SANTA FE ENERGY COMPANY TO SO CAL GAS COMPANY | RIGHT-OF-WAY AGREEMENT |

to

CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT. # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA.  KERN | MIDWAY | PR-02-00-000019   CA-LEG. | 9/1/88 | MID-SET COGENERATION CO. AND SANTA FE ENERGY COMPANY | STEAM PURCHASE & SALE AGREEMENT |
| CA.  KERN | MIDWAY | PR-02-00-000018   CA-LEG. | 7/27/82 | MCFARLAND ENERGY CORP. (BUYER) AND SANTA FE ENERGY RESOURCES, INC. (SELLER) | STEAM PURCHASE AGREEMENT |
| CA.  KERN | MIDWAY | PR-02-00-000017   CA-LEG. | 8/15/82 | M. H. WHITTER (BUYER) AND SANTA FE ENERGY RESOURCES, INC. (SELLER) | STEAM PURCHASE AGREEMENT |
| CA.  KERN | MIDWAY | PR-02-00-000047   CA-LEG. | 7/1/88 | WEST KERN WATER DISTRICT AND SANTA FE ENERGY RESOURCES, INC. | WATER SERVICE AGREEMENT |
| CA.  KERN | MIDWAY | PR-02-00-000019   CA-LEG. | 9/15/88 | MID-SET COGENERATION CO. AND SANTA FE ENERGY COMPANY | WATER SUPPLY AGREEMENT |
| CA.  KERN | MIDWAY SUNSET | 0723E05442 | PENDING | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | AGREEMENT FOR INSTALLATION OR ALLOCATION OF SPECIAL FACILITIES |
| CA.  KERN | MIDWAY, S. | | 07/24/95 | COUGHRAN BROTHERS AND SANTA FE ENERGY RESOURCES, INC. | COMPRESSOR LEASE AGREEMENT |
| CA.  KERN | MIDWAY, S. | SFCA-0233/0234/0235 | 11/01/90 | GE CAPITAL MODULAR SPACE AND SANTA FE ENERGY RESOURCES, INC. | 3 TRAILER LEASES |
| CA.  KERN | MIDWAY, S. | #378683 UNIT #75328 | 01/07/93 | GE CAPITAL MODULAR SPACE AND SANTA FE ENERGY RESOURCES, INC. | 1 TRAILER/DATA LOGGER |
| CA.  KERN | MIDWAY, S. | #448085 UNIT #065828 | 11/16/93 | GE CAPITAL MODULAR SPACE AND SANTA FE ENERGY RESOURCES, INC. | R. WARD |
| CA  KERN &  SAN LUIS  OBISPO | MIDWAY-SUNSET - 828  MIDWAY-SUNSET - CA-109 | 617748 | 09/06/67 | CWOD (SFER) & TIDEWATER OIL CO (NOW TEXACO) | WATER EXCHANGE AGMT |
| CA  KERN &  SAN LUIS  OBISPO | MIDWAY-SUNSET - 828  MIDWAY-SUNSET - CA-109 | 4911-A | 09/13/84 | ARCO WESTERN ENERGY, A UNIT OF ATLANTIC RICHFIELD COMPANY, AND SANTA FE ENERGY RESOURCES, INC. | STEAM-HEAT EXCHANGE AGREEMENT |
| CA  KERN &  SAN LUIS  OBISPO | MIDWAY-SUNSET - 828  MIDWAY-SUNSET - CA-109 | 617750 | 09/15/66 | WEST KERN WATER DISTRICT | INDUSTRIAL WATER SERVICE AGMT |
| CA  LOS  ANGELES | SAN PEDRO BAY - 838  BETA - CA-279 | 1045A | 09/01/92 | UNION OIL COMPANY OF CALIFORNIA AND KERR-MCGEE CORPORATION, ET AL | "MASTER EXCHANGE AGREEMENT"? PIPELINE SHARING AGREEMENT |
| CA  LOS  ANGELES | SANTA FE SPRINGS - 839  SANTA FE SPRINGS-CA-107 | NEW | 01/01/86 | SAGE ENERGY AND MOBIL ROCKY MOUNTAIN INC. | SALT WATER DISPOSAL SERVICE AGRMT. |
| CA  LOS  ANGELES | SANTA FE SPRINGS - 839  SANTA FE SPRINGS-CA-107 | NEW | 08/02/93 AS AM'D | OIL DYNAMICS INC. AND MOBIL EXPLORATION & PRODUCING U.S. INC. | AGREEMENT RE SUBMERSIBLE PUMPS |
| CA. | Various - Could apply to various properties | PR-21-00-000088   CA-LEG. | Undated | WEST KERN WATER DISTRICT AND SANTA FE ENERGY RESOURCES (BUYER) | WATER SERVICE - Memorandum of Understanding |
| CA. | VARIOUS AREAS | 011  CA-LEG. | 6/17/1991, effec. 8/1/91 | PACIFIC GAS & ELECTRIC COMPANY AND SANTA FE ENERGY RESOURCES, INC. | PG&E  GAS SERVICE AGREEMENT - NATURAL |
| CA. | CALIFORNIA | HOU-MIS | 6/30/84 | SANTA FE ENERGY RESOURCES, INC. AND ARTESIA DATA SYSTEMS, INC. | SOFTWARE AND LICENSE AGREEMENT & SUPPORT AND ENHANCEMENT AGREEMENT |
| CA. | CALIFORNIA | HOU-MIS | 9/1/84 | SANTA FE ENERGY RESOURCES, INC. AND VERTICOMP, INC. (NOW HALLIBURTON) | SOFTWARE LICENSE AGMT. & MAINTENANCE AGMT. |
| CA. | CALIFORNIA | HOU-MIS | 4/19/90 | SANTA FE ENERGY RESOURCES, INC. AND IMRS INC. | SOFTWARE LICENSE AGMT. (MICRO CONTROL) |
| CA. | CALIFORNIA | HOU-MIS | 7/23/90 | SANTA FE ENERGY RESOURCES, INC. AND PHOENIX LEASING INCORPORATED | MASTER EQUIPMENT LEASE (PBX/TEL. EQPMT.) |
| CA. | CALIFORNIA | HOU-MIS | 10/21/82 | SANTA FE ENERGY RESOURCES, INC. AND DUN & BRADSTREET SOFTWARE SERVICES, INC. | LETTER OF ASSIGNMENT & ATTACHED LICENSE AGRMTS. (2) |
| CA. | CALIFORNIA | HOU-MIS | 6/24/94 | SANTA FE ENERGY RESOURCES, INC. AND INNOVATIVE BUSINESS SOLUTIONS, INC | MASTER LICENSE AND SERVICE AGMT. FOR SOFTWARE &/OR SERVICES |
| CA. | CALIFORNIA | HOU-MIS | 3/8/91 | SANTA FE ENERGY RESOURCES, INC. AND DWIGHT'S ENERGYDATA, INC. | LICENSE AGMT. FOR DATA |
| CA. | CALIFORNIA | HOU-MIS | 7/24/92 | SANTA FE ENERGY RESOURCES, INC. AND DWIGHT'S ENERGYDATA, INC. | LICENSE AGMT. FOR DATA |
| CA. | CALIFORNIA | HOU-MIS | 5/10/88 | LANDMARK GRAPHICS CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | SOFTWARE PURCHASE AGREEMENT |
| CA. | WESTERN DIV. OFFICES | HOU-OFF.SERVICES | 11/14/95 | ZASO ENTERPRISES, INC., SELLER AND SANTA FE ENERGY RESOURCES, INC., BUYER | VERSATILE SOFTWARE LICENSE AGMT. |
| CA  KERN | BELRIDGE - 252; BELRIDGE  SO - CA-252 | 900834 (FEE Min. File 1) | 10/05/90 | MISSION OPERATING PARTNERSHIP, L.P. , ("MISSION") AND SANTA FE ENERGY RESOURCES, INC., ("PURCHASER") | PURCHASE & SALE AGREEMENT |
| CA  KERN | BELRIDGE - 252; BELRIDGE  SO - CA-252 | 900834 (FEE Min. File 2) | 10/31/90 | SANTA FE ENERGY RESOURCES, INC. AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA | AGREEMENT OF LIMITED PARTNERSHIP - SOUTH BELRIDGE LIMITED PARTNERSHIP - W/ATTACHED OPER. AGMT. |
| CA.  KERN | BELRIDGE - 252; BELRIDGE  SO - CA-252 | 2689-A | 04/30/87 | SANTA FE ENERGY COMPANY, AS OPERATOR, AND AMERICAN ROYALTY PRODUCING COMPANY | OPERATING AGREEMENT |
| CA  KERN | BELRIDGE - 804  BELRIDGE SO - CA-252 | 617677 | 02/19/87 | PETRO-LEWIS CORP. ET AL | PURCHASE / SALE AGMT |
| CA  KERN | BELRIDGE - 804  BELRIDGE SO - CA-252 | 617679 | 05/17/90 | EXXON SAN JOAQUIN PRODUCTION CO . | DIATOMITE WATERFLOOD LEASELINE AGMT |
| CA.  KERN | BELRIDGE, S. | PR-02-00-000051   CA-LEG. | | FPCD, PETRO LEWS, ARF CO, AND SANTA FE ENERGY COMPANY | ASSIGNMENT & ASSUMPTION AGREEMENT & TRANSFER REF. TO 12/18/86 AGREEMENT & CORRES. |
| CA.  KERN | BELRIDGE, S. | CA-2689-F CA-LAND | 4/29/83 | UNION OIL CO. OF CALIFORNIA AND PETRO-LEWIS | LAND ANNEXATION AGREEMENT |
| CA.  KERN | BELRIDGE, S. | CA-2689-F CA-LAND | 7/29/83 | UNION OIL CO. OF CALIFORNIA AND PETRO-LEWIS | LAND AGREEMENT |

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT. # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA. FRESNO | COALINGA - 121; COALINGA WEST - CA-121 | LSE-6686 | 12/03/90 | CHEVRON USA INC. AND SANTA FE ENERGY RESOURCES, INC. | EXCHANGE AGREEMENT |
| CA KERN | COALINGA - 611 COALINGA WEST - CA-121 | 617535 A/K/A 934 | 05/11/85 AMEND 07/11/85, 11/22/85 | WESTATES PETROLEUM CO. AND W. T. MCDONALD, ET AL | POOLING  AGREEMENT |
| CA FRESNO | COALINGA - 611 COALINGA WEST - CA-121 | 617700-A | 07/14/87 | MOBIL EXPLORATION & PRODUCTION U.S. INC. AND SANTA FE ENERGY COMPANY | PURCHASE / SALE AGMT. |
| CA FRESNO | COALINGA - 611 COALINGA WEST - CA-121 | 4591-O | 07/12/91 | COALINGA COGENERATION COMPANY AND SANTA FE ENERGY RESOURCES INC. | COST SHARING AGREEMENT(RE CONSTRUCTING NATURAL GAS FIRED CO GEN FAC) |
| CA FRESNO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617630 | 12/27/73 | EDMONDSON, WILLIAM F | ASSIGNMENT OF LETTER |
| CA YOLO | CONWAY RANCH - 613 CONWAY RANCH - CA-103 | 617710 | 03/18/74 | ARGO, DOW CHEMICAL & WESTATES (SFER) | FARMOUT / OPERATING AGMT |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 04/01/75 | ATLANTIC RICHFIELD WESTATES (SFER) | ACREAGE CONTRIBUTION |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 01/01/79 | CWOD (SFEC), DOW  CHEMICAL & ARGO PET., NATOMAS EX. | DECLARATION OF POOLING         CWOD NATOMAS NO. 1 |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 07/15/77 | CWOD, ARGO, NATOMAS | DECL. OF POOLING WITH OPERATING AGRMT. |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 06/13/74 | HOFFMAN, ROBERT D | ASSIGNMENT OF ORRI |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 01/01/79 | DOW CHEMICAL CO AND ARGO PET., CWOD, WOODLAND FARMS | GAS POOLING / OPERATING AGMT |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 12/09/77 SUPPL. 01/30/78 | DOW CHEMICAL CO, ARGO PET., CWOD, WOODLAND FARMS | DECLARATION OF POOLING |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 12/09/80 | ARGO PETROLEUM CORP, SFEC, WOODLAND FARMS, SAC. NORTHERN RR | DECLARATION OF POOLING |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 10/20/87 | CASTLE MINERALS, INC. AND SFEC | ASSIGNMENT / ORRI |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | | 12/09/80 | SANTA FE ENERGY COMPANY, ET AL TO PUBLIC | DECLARATION OF POOLING (GAS) |
| CA KERN | KERN MINERALS - 703 (MIDWAY-SUNSET) CYMRIC - CA-309 | 617735 | 10/01/48 | INDEPENDENT EXPL CO & SHELL OIL CO | UNIT AGMT |
| CA KERN | KERN MINERALS - 703 (MIDWAY-SUNSET) CYMRIC - CA-309 | 4673 | 04/23/93 | SANTA FE ENERGY RESOURCES, INC. AND UNION OIL COMPANY OF CALIFORNIA | EXCHANGE AGREEMENT |
| CA KERN | KERN MINERALS - 703 CYMRIC - CA-309 | 4673-B | 06/18/48 | INTEX OIL COMPANY, ET AL TO THE PUBLIC | UNIT AGREEMENT FOR THE CARNEROS POOL |
| CA KERN | KERN RIVER - 822 KERN RIVER - CA-106 | 617838 | 4/1/71975; AS AMD'D 1/28/76; 8/15/80; 1/27/82; 6/15/89 | STANDARD OIL COMPANY OF CALIFORNIA AND CHANSLOR WESTERN OIL DEVELOPMENT COMPANY | LINE WELL AGMT #1 |
| CA KERN | KERN RIVER - 822 KERN RIVER - CA-106 | 617642 | 07/09/80 AMEND 5/01/81, 08/13/84, 07/07/84, 04/07/87 | GETTY OIL CO & SFEC | LINE WELL AGMT #1 |
| CA KERN | KERN RIVER - 822 KERN RIVER - CA-106 | 617688 | 03/19/87 EFF 03/01/87 | SHELL CALIF PROD INC | LINE WELL AGMT |
| CA KERN | KERN RIVER - 822 KERN RIVER - CA-106 | 4749-A | 12/15/93 | TEXACO EXPLORATION & PRODUCTION INC. AND SANTA FE ENERGY RESOURCES, INC. | LINE WELL AGREEMENT |
| CA KERN | KERN RIVER - 822 KERN RIVER - CA-106 | 4902-A | 10/02/94 | CHEVRON USA PRODUCTION CO. AND SANTA FE ENERGY RESOURCES INC., ET AL | TRI-CO LINE WELL AGREEMENT |
| CA KERN | KERN RIVER - 822 KERN RIVER - CA-106 | | 10/04/94 | SANTA FE ENERGY OPERATING PARTNERS. L.P. AND ATLANTIC RICHFIELD COMPANY. | OFFSET WELL AGREEMENT |
| CA KERN | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617559 | 12/30/63 | GETTY OIL COMPANY AND SANTA FE ENERGY COMPANY | LINE WELL AGREEMENT |
| CA KERN | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 4977-A | 07/01/76 | CHEVRON U.S.A. PRODUCTION COMPANY AND SANTA FE ENERGY COMPANY | EXPLORATION AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617570 | 11/29/84 AMEND 02/27/87, 09/23/88, 08/10/89, 08/18/89 | W. T. WOODWARD, ET AL, TR. FOR W. T. WOODWARD & INEZ T. WOODWARD INTERVIVOS TRUST DATED 12/11/77 TO SANTA FE ENERGY CO. | FARMIN / IOPA SALES CONTRACT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617594 | 11/25/85 AMEND 06/02/86, 02/27/87, 04/23/88, 08/10/89 | W. T. WOODWARD, ET AL, TR. FOR W. T. WOODWARD & INEZ T. WOODWARD INTERVIVOS TRUST DATED 12/11/77 TO SANTA FE ENERGY CO. | FARMIN |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617604 | 11/06/85 | SFEC & SUN EXPL & PROD CO | LINE WELL AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617614 | 06/06/86 AMEND 03/27/87, 12/28/88, 07/01/89 | ELIZABETH L. PRUEITT & BILL GILL TO SANTA FE ENERGY COMPANY | FARMOUT AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617622 | 09/30/82 | OCCIDENTAL PETRLEUM CORP | PURCHASE AGMT. W/ATTACH. OPERATING AGMT. |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617646 | 07/24/72 | CWOD & SUN EXPL & PROD CO | LINE WELL AGMT |

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES,INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT. # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617647 | 09/16/1972 AMEND 04/11/85 | SHELL OIL COMPANY AND CHANSLOR-WESTERN OIL & DEVELOPMENT CO. | LINE WELL AGMT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617648 | 10/09/74 AMEND 07/08/91, 08/15/91, 11/04/91, 01/11/93 | CHANSLOR-WESTERN OIL & DEVELOPMENT CO. AND UNION OIL CO | LINE WELL AGMT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617649 | 12/02/74 | CHANSLOR-WESTERN OIL & DEVELOPMENT CO. AND MCFARLAND ENERGY CO | LINE WELL AGMT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617650 | 08/14/36 | CHANSLOR-CANFIELD MIDWAY OIL COMPANY AND QUALITY OIL COMPANY | LINE WELL AGMT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617688 | 03/01/87 EFF 03/01/87 | SANTA FE ENERGY COMPANY AND SHELL CALIFORNIA PRODUCTION INC | EXCHANGE AGMT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617715 | 11/01/87 | SFEC & BERRY HOLDING CO. | PURCHASE / SALE AGMT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617747 | 05/07/87 | SHELL WESTERN E&P INC. AND SANTA FE ENERGY COMPANY | LINE WELL AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617708-A | 11/23/53 | OCEANIC OIL COMPANY, AS OPERATOR, AND ELOISE HELLER, ET AL (INTERIM SYNDICATE) | OPERATING AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 617708-B | 09/25/87 AMEND 11/13/87 | CHEVRON USA, INC. AND SANTA FE ENERGY CO. | PURCHASE & SALE AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 4711-A | 02/24/93 AMEND 02/25/93 | SANTA FE ENERGY RESOURCES, INC. AND SHELL WESTERN E&P INC. | DATA EXCHANGE AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 4712-A | 02/22/93 | CHEVRON U.S.A., INC. TO SANTA FE ENERGY RESOURCES, INC. | SEISMIC LICENSE AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 4732-A | 06/25/93 AMEND 08/19/93, 09/27/93 | U.S. DEPT. OF INTERIOR, BUREAU OF LAND MANAGEMENT AND SANTA FE ENERGY COMPANY | LINE WELL AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 4812-A | 12/28/94 | U.S. DEPT. OF INTERIOR, BUREAU OF LAND MANAGEMENT AND SANTA FE ENERGY RESOURCES, INC. | LINE WELL AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 4942-A | 12/07/94 | SANTA FE ENERGY RESOURCES, INC. AND ATLANTIC RICHFIELD CO. (ARCO WESTERN ENERGY) | LINE WELL AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 7930 | 09/30/82 | OCCIDENTAL PETROLEUM CORPORATION, SELLER, TO SANTA FE ENERGY COMPANY, BUYER | PURCHASE AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 7930 | 10/12/82 | DR. ARMAND HAMMER, SELLER, TO SANTA FE ENERGY COMPANY, BUYER | PURCHASE AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 901002-102 | 02/25/74 | CHANSLOR-CANFIELD MIDWAY OIL COMPANY AND STANDARD OIL COMPANY OF CALIFORNIA | COMMINGLING AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 901002-105 | 06/21/54 | CHANSLOR-WESTERN OIL & DEVELOPMENT CO. AND OCEANIC OIL CO. | EXPLORATORY AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 901002-105 | 10/05/76 | GENERAL AMERICAN OIL COMPANY OF TEXAS; CHANSLOR-WESTERN OIL AND DEVELOPMENT COMPANY; AND STANDARD OIL COMPANY OF CALIFORNIA | COMMINGLING AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 901573 | 09/01/89 | SANTA FE ENERGY COMPANY TO DANNY R. SHAFFER, ET UX | FIRST RIGHT OF REFUSAL AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 CYPRESS - CA-163 | 4468-A | 1/13/1992; ACCPTD 1/17/92 | SANTA FE ENERGY RESOURCES, INC. TO UNOCAL CORPORATION | BOTTOM HOLE CONTRIBUTION |
| CA ORANGE | OLINDA HEIGHTS | LAND | 11/22/1891 EFF. 10/17/91 | SANTA FE ENERGY RESOURCES, INC. AND CLARK TINGEY HATCH ET UX QUENTA KELLIS HATCH | AGREEMENT /RE SFER ACCEPTING SURFACE WATERS FROM HATCH PROPERTY) |
| CA ORANGE | OLINDA HEIGHTS | LAND | 12/12/1933, AS AMENDED | WASTE WATER DISPOSAL COMPANY AND CHANSLOR CANFIELD MIDWAY OIL COMPANY | AGREEMENT /RE WASTE WATER DISPOSAL) |
| CA ORANGE & KERN | OLINDA HEIGHTS | 900721 | 01/12/61 | SHELL OIL COMPANY, CHANSLOR-WESTERN OIL AND DEVELOPMENT COMPANY, ET AL | BOUNDARY LINE AGREEMENT |
| CA ORANGE | ORANGE MINERALS - 707 RICHFIELD - CA-111 | 617633 | 10/15/68 | TEXACO INC | UNIT / RICHFIELD EAST DOME |

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT. # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS - CA 255 ROSECRANS S - 261 HOWARD TOWN - CA-263 | 617677 | 04/30/87 | PETRO-LEWIS CORP, ET AL | PURCHASE & SALE AGREEMENT |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS - CA 261 | 617614 | 04/20/71 | MARMAC RESOURCES COMPANY AND WINDMAN BROTHERS, ET AL | JOINT VENTURE AGREEMENT |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS - CA -255 | 617722 | 3/1/90 BOTH DOCS | SANTA FE ENERGY OPERATING PARTNERS, L.P., MAERSK ENERGY INC. & UNOCAL CORP, ET AL | UNIT / UNIT OPERATING AGREEMENT |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS - CA -255 | 4833-A | 03/04/93 | DOROTHY S. CHANDLER, ET AL AND SANTA FE ENERGY OPERATING PARTNERS, L.P. | COMMINGLING AGREEMENT |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS - CA -255 | 617701 | 05/01/87 | SHULL, R W & SANTA FE OPERATING PARTNERS, LP | PURCHASE & SALE AGREEMENT |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS - CA -255 | 4832-A | 06/14/94 | UNION OIL COMPANY OF CALIFORNIA AND SANTA FE ENERGY OPERATING PARTNERS L.P. | AGREEMENT FOR PURCHASE & SALE |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS S - CA -261 | 617740 | 07/12/40 | KELLY, THOMAS & SONS INC & EARL OAKLEY | OVERRIDE AGREEMENT |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS S - CA-261 | 2735-A | 10/01/91 | TAYLOR, ET AL & SFEOP | COMMINGLING AGREEMENT |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS MAIN-CA 255 ROSECRANS S - CA-261 | 617714 | 11/24/87 | SANTA FE ENERGY OPERATING PARTNER, L.P. & MARMAC RESOURCES CO | PURCHASE & SALE AGREEMENT |
| CA LOS ANGELES | SANTA FE SPRINGS | | 11/04/95 | NUEVO ENERGY COMPANY, AS ASSIGNOR, AND SANTA FE ENERGY RESOURCES, INC., AS ASSIGNEE | PURCHASE & SALE AGREEMENT |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617657A | 01/05/76 | SHELL OIL COMPANY, AS OPERATOR, AND OXY PETROLEUM, INC., ET AL | OPERATING AGREEMENT (84 UNITIZED) |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617657B | 07/22/76 | SHELL OIL COMPANY, ET AL AND STANDARD OIL COMPANY OF CALIFORNIA, ET AL | WELL CONTRIBUTION AGREEMENT |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617657C | 11/22/76 | SHELL OIL COMPANY, ET AL AND STANDARD OIL COMPANY OF CALIFORNIA, ET AL | WELL CONTRIBUTION AGREEMENT |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617657D | 05/31/77 | CHEVRON U.S.A., INC., ET AL AND SHELL OIL COMPANY, ET AL | WELL CONTRIBUTION AGREEMENT |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617657E | 05/05/77 | CHEVRON U.S.A., INC. AND SHELL OIL COMPANY | DATA TRADE |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617656A | 02/21/79 | SHELL OIL COMPANY AND OXY PETROLEUM, INC., ET AL | UNIT AGREEMENT FOR EXPLORATION, DEVELOPMENT, AND PRODUCTION |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617656B | 10/01/78 | SHELL OIL COMPANY, AS OPERATOR, AND OXY PETROLEUM, INC., ET AL AS NON-OPERATORS | UNIT OPERATING AGREEMENT |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617656C | 04/22/80 | SHELL OIL COMPANY AND CHEVRON U.S.A., INC., ET AL | AGREEMENT RE PRESERVING FLEXIBILITY IN DESIGN OF DRILLING PLATFORM FOR AREAS 1 & 2     (P-0300 & 0301) & POSS. COMMITTING    P-0306 TO 10/1/78 O/A |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617656D | 08/02/82 | SHELL CALIFORNIA PRODUCTION INC., AND , CHEVRON U.S.A., INC., ET AL | UNIT AGREEMENT FOR EXPLORATION, DEVELOPMENT, & PROD. OPER. - BETA UNIT |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617656E 08/01/82 AMEND 04/15/83 | | SHELL CALIFORNIA PRODUCTION INC., AS SUB-OPERATOR, CHEVRON U.S.A., INC., AS SUB-OPERATOR AND PETRO LEWIS BETA COMPANY JOINT VENTURE, ET AL | UNIT OPERATING AGREEMENT - AREAS 1,2,3,4 |
| CA OFFSHORE | SAN PEDRO BAY - 838 BETA - CA-279 | 617660B | 11/01/79 | SHELL CALIFORNIA PRODUCTION INC., AS SUB-OPERATOR, CHEVRON U.S.A., INC., AS SUB-OPERATOR AND PETRO LEWIS BETA COMPANY JOINT VENTURE, ET AL | UNIT OPERATING AGREEMENT |
| CA OFFSHORE | SANTA FE SPRINGS - 839 SANTA FE SPRINGS-CA-107 | 617627A | 04/01/69 | MOBIL OIL CORPORATION , AS UNIT OPERATOR, AND TEXACO, INC., ET AL | UNIT AGREEMENT, SANTA FE SPRINGS UNIT |
| CA LOS ANGELES | SANTA FE SPRINGS - 839 SANTA FE SPRINGS-CA-107 | 617627B | 04/01/69 | MOBIL OIL CORPORATION , AS UNIT OPERATOR, AND TEXACO, INC., ET AL | UNIT OPERATING AGREEMENT |
| CA LOS ANGELES | SANTA FE SPRINGS - 839 SANTA FE SPRINGS-CA-107 | LD-07-00 | 02/01/95 EFF 05/01/96 | MOBIL OIL CORP. MOBIL ROCKY MT INC. & SANTA FE ENERGY RESOURCES, INC. | PURCHASE & SALE AGMT |
| CA LOS ANGELES | SANTA FE SPRINGS - 839 SANTA FE SPRINGS-CA-107 | CA-LAND | 02/09/53 | B-L AND ASSOCIATES, AS OPERATOR, AND ELSINORE C. MACHRIS, AS NON-OPERATOR | OPERATING AGREEMENT |
| CA LOS ANGELES | SANTA FE SPRINGS - 839 SANTA FE SPRINGS-CA-107 | NEW | 03/07/56 | BANDINI PETROLEUM COMPANY, AS OPERATOR, AND LOS FELIZ INVESTMENT CO., AS NON-OPERATOR | OPERATING AGREEMENT |
| CA LOS ANGELES | SANTA FE SPRINGS - 839 SANTA FE SPRINGS-CA-107 | NEW | 03/26/92 | CITY OF SANTA FE SPRING, THE REDEVELOPMENT AGENCY OF THE CITY OF SANTA FE SPRINGS, MCGRANAHAM, CARLSON & COMPANY AND MOBIL OIL CORPORATION | LETTER AGREEMENT |
| CA KERN | VARIOUS | | 09/30/87 | ATCHISON, TOPEKA & SANTA FE RAILROAD AND SANTA FE ENERGY | AGREEMENT OF PURCHASE AND SALE (RE TERM ROYALTY) |
| CA LOS ANGELES | WILMINGTON - 847 WILMINGTON - CA-222 | 617636 | 08/10/66 | HUMBLE OIL & REFINING COMPANY (NOW EXXON), ET AL, TO PUBLIC. -- CHANSLOR-WESTERN OIL & DEVELOPMENT CO. RATIFIED THIS UNIT 9/1/71 | UNIT AGREEMENT - FAULT BLOCK 1, TOWNLOT UNIT; UNIT OPERATING AGREEMENT |
| CA LOS ANGELES | WILMINGTON - 847 WILMINGTON - CA-222 | 617636B | 08/01/75 | SUN OIL CO | UNIT AGMT |
| CA LOS ANGELES | WILMINGTON - 847 WILMINGTON - CA-222 | 617745A | 08/01/61 | SOCONY MOBIL OIL CO., INC., AS OPERATOR, AND UNION PACIFIC RAILROAD CO., ET AL | UNIT AGREEMENT - FAULT BLK IV |
| CA LOS ANGELES | WILMINGTON - 847 WILMINGTON - CA-222 | 617745B | 08/01/61 | SOCONY MOBIL OIL CO., INC., AS OPERATOR, AND UNION PACIFIC RAILROAD CO., ET AL | UNIT OPERATING AGREEMENT - FAULT BLK IV - RANGER ZONE |

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT.# | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA LOS ANGELES | WILMINGTON - 847 WILMINGTON - CA-222 | 617745C | 08/01/63 | SOCONY MOBIL OIL CO., INC., AS OPERATOR, AND SIGNAL OIL CO., ET AL | UNIT AGREEMENT - FAULT BLK IV |
| CA LOS ANGELES | WILMINGTON - 847 WILMINGTON - CA-222 | 617745D | 08/01/63 | SOCONY MOBIL OIL CO., INC., AS OPERATOR, AND SIGNAL OIL CO., ET AL | UNIT OPERATING AGREEMENT - FAULT BLK V - RANGER ZONE |
| 4 | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | 4915 | 04/12/95 | CALRESOURCES LLC, SHELL WESTERN E&P, INC. AND SANTA FE ENERGY RESOURCES, INC. | LINE WELL AGREEMENT & GAS PURCHASE & SALE AGREEMENT |
| CA KERN | BELRIDGE - 804 BELRIDGE SO - CA-252 | 2689-I | 10/03/84 | CHEVRON USA INC. TO SHELL CALIFORNIA PRODUCTION INC.,        ET AL | PIPELINE /ROW EASEMENT |
| CA KERN | BELRIDGE - 804 BELRIDGE SO - CA-252 | 2689-K | 08/28/84 | SHELL CALIFORNIA PRODUCTION INC. AND PETRO-LEWIS CORPORATION | LICENSE/ROW AGMT FOR WATER TRANSPORTA-TION |
| CA KERN | BELRIDGE - 804 BELRIDGE SO - CA-252 | 2689-N | 02/23/87 | CHEVRON U.S.A. INC. TO PETRO LEWIS CORPORATION | PIPELINE ROW (FOR O&G) |
| | BELRIDGE - 804 BELRIDGE SO - CA-252 | 2689-P | 11/01/83 | CHEVRON USA INC & PETRO-LEWIS | PIPELINE ROW |
| CA.   KERN | BELRIDGE, S. | CA-2689-F CA-LAND | 3/22/1988 eff. 4/1/89 | UNION OIL CO. OF CALIFORNIA AND SANTA FE ENERGY COMPANY | LAND LICENSE AGREEMENT |
| CA.   KERN | BELRIDGE, S.          -- | PR-02-00-00008   CA-LEG. | 8/21/87 | CELERON OIL & GAS CORP. AND SANTA FE ENERGY RESOURCES, INC. | LICENSE AGREEMENT - Pipeline |
| CA FRESNO | COALINGA | 617700B | 09/21/83 | CHEVRON USA, INC. AND THE SUPERIOR OIL COMPANY | PIPELINE AGREEMENT |
| CA FRESNO | COALINGA | 617700B | 12/05/83 | GETTY OIL COMPANY AND THE SUPERIOR OIL COMPANY | LICENSE AGREEMENT |
| CA.   KERN | KERN RIVER | PR-02-00-000028   CA-LEG. | 12/18/92 | NORTH KERN WATER STORAGE DISTRICT | LICENSE AGREEMENT |
| CA.   KERN | MIDWAY | PR-02-00-000045   CA-LEG. | 11/3/87 | SUN EXPLORATION AND PRODUCTION COMPANY AND SANTA FE ENERGY COMPANY | LICENSE AGREEMENT - Pipeline |
| CA.   KERN | MIDWAY | PR-02-00-000045   CA-LEG. | 12/1/87 | SUN EXPLORATION AND PRODUCTION COMPANY AND SANTA FE ENERGY COMPANY | LICENSE AGREEMENT - Pipeline |
| CA.   KERN | MIDWAY | PR-02-00-000052   CA-LEG. | 2/27/90 | UNION COMPANY OF CALIFORNIA AND SANTA FE ENERGY COMPANY | LICENSE AGREEMENT - Pipeline |
| CA.   KERN | MIDWAY | PR-02   CA-LEG. | 7/96 | CAL RESOURCES AND SANTA FE ENERGY RESOURCES, INC. | LICENSE AGREEMENT - Pipeline |
| CA.   KERN | MIDWAY | PR-02-00-000023   CA-LEG. | 1/25/90 | MOBIL OIL CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | LICENSE AGREEMENT - Pipeline |
| CA.   KERN | MIDWAY (#1 & 2);     XERN RIVER (#3) | PR-02-00-000040   CA-LEG. | 1) 2/12/1988; 2) 4/11/88; 3) 10/21/87 | 1) SANTA FE ENERGY ENERGY RESOURCES, INC. TO SHELL WESTERN E&P INC.; 2) SANTA FE ENERGY COMPANY TO UNION OIL COMPANY OF CALIFORNIA; 3) SANTA FE ENERGY COMPANY TO SHELL WESTERN E&P INC. | 1) LICENSE AGREEMENT; 2) LICENSE AGREEMENT; 3) LICENSE AGREEMENT |
| CA KERN & SAN LUIS OBISPO | MIDWAY-SUNSET - 828 MIDWAY-SUNSET - CA-109 | | 02/27/79 | GETTY OIL CO | LICENSE AGMT |
| CA.   KERN | BELRIDGE, S. | CA-4160 (Land Dept)   CA-LEG. | 8/22/1988; AMD'D 1/22/91 | SANTA FE ENERGY RESOURCES, INC., "BORROWER", AND TRUST COMPANY OF THE WEST, ET AL, "LENDER" | LOAN AGREEMENT; AMENDED & RESTATED TERM LOAN AGREEMENT |
| CA. | MISC. | LEGAL | 6/13/96 | PETRIC PARLEMAN & CO. AND CHASE SECURITIES INC. AND SANTA FE ENERGY RESOURCES, INC. | LETTER AGREEMENT |
| CA | SIGNAL HILL | LEGAL | 10/31/90 | SIGNAL HILL SERVICES, INC., AND SANTA FE ENERGY RESOURCES, INC. | AGREEMENT FOR PURCHASE AND SALE |
| CA | SIGNAL HILL | LEGAL | 2/15/91 | SIGNAL HILL SERVICES, INC. TO SANTA FE ENERGY RESOURCES, INC. | PROMISSORY NOTE ($2,035,000) |
| CA | SIGNAL HILL | LEGAL | 2/15/91 | RICHARD L. CARONE AND ROBERT L. CARONE TO SANTA FE ENERGY RESOURCES, INC. | GUARANTY |
| CA. | VARIOUS AREAS | PR-02-000009   CA-LEG. | 2/23/93 | NATIONAL CERTIFIED FABRICATORS, INC. AND SANTA FE ENERGY RESOURCES, INC. | AGREEMENT |
| CA. | VARIOUS AREAS | PR-08 Patents General   CA-LEG. | | HERNDON DESIGN COMPANY AND SANTA FE ENERGY RESOURCES, INC. | PATENT #4,824,614. |
| CA. | VARIOUS AREAS | PR-02-00-000016   CA-LEG. | Left blank on contract | LTV ENERGY PRODUCTS CO. | PATENT |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | 3/15/77 | JEFFREY A. JONES, INVENTOR, TO CHANSLOR WESTERN OIL & DEVELOPMENT CO., ASSIGNEE | PATENT 4,012,207 |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | 4/25/89 | JEFFREY A. JONES, INVENTOR, TO SANTA FE ENERGY COMPANY, ASSIGNEE | PATENT 4,824,614 |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | (1) 2/25/1991; & (2) Agmt. 2/22/93 | (1) SANTA FE ENERGY RESOURCES INC. AND NATIONAL CERTIFIED FABRICATORS (2) SANTA FE ENERGY RESOURCES, INC. AND NATIONAL CERTIFIED FABRICATORS | PATENT 4,989,641;        AGREEMENT |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | (1) 2/5/91; (2) | CHEVRON USA INC. AND SANTA FE ENERGY RESOURCES, INC. | PATENT 4,989,641 & AGREEMENT |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | (1) 2/5/91; (2) 2/22/93 | SANTA FE ENERGY RESOURCES INC. AND NATIONAL CERTIFIED FABRICATORS | PATENT 4,989,641 & ASSIGNMENT |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | (1) 2/5/91;  (2) 6/15/93 | HERNDON DESIGN COMPANY AND SANTA FE ENERGY RESOURCES, INC. | PATENT 4,989,641 & ASSIGNMENT |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | 9/25/89 | JEFFREY A. JONES AND JOHN W. HERNDON, INVENTORS, TO SANTA FE ENERGY COMPANY, ASSIGNEE | PATENT 4,989,641 |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | 2/5/91 | JEFFREY A. JONES AND JOHN W. HERNDON, INVENTORS, TO SANTA FE ENERGY COMPANY, ASSIGNEE | PATENT 4,989,641; Canadian Patent 2,021,387 |
| CA. | VARIOUS AREAS | PR-08   CA-LEG. | 2/25/92 | JEFFREY A. JONES, INVENTOR, TO SANTA FE ENERGY COMPANY, ASSIGNEE | PATENT 5,090,238 |

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT.# | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA. | VARIOUS AREAS | PR-08   CA- LEG. | 3/11/92 | LTV ENERGY PRODUCTS COMPANY AND SANTA FE ENERGY RESOURCES, INC. | PATENT APPLICATIONS |
| CA. | VARIOUS AREAS | PR-08   CA- LEG. | 4/3/87 | JEFFREY A. JONES, INVENTOR, TO SANTA FE ENERGY COMPANY, ASSIGNEE | PATENT ASSIGNMENT |
| CA.   KERN | MIDWAY | PR-02   CA- LEG. | | RADSCAN INC. AND SANTA FE ENERGY RESOURCES, INC. | MICROWAVE MULTIPLE ADDRESS DATA ACQUISITION AGREEMENT "Short Spaced" |
| CA.   KERN | MIDWAY | PR-02 FCC CA-LEG. | 8/3/84 | FEDERAL COMMUNICATIONS COMMISSION AND SANTA FE ENERGY RESOURCES, INC. | MICROWAVE RADIO STATION LICENSE |
| CA.   KERN | MIDWAY | PR-02   CA- LEG. | 1) 10/28/1993 & 7/93; & 2) 10/28/93 | 1) FELLOWS GENERATING COMPANY, LP AND SANTA FE ENERGY RESOURCES, INC.; 2) U.S. GENERATING CO., ET AL AND SANTA FE ENERGY RESOURCES, INC. | 1) LETTER AGREEMENT RE COGENERATION AGREEMENT; 2) COGENERATION PROJECT AGREEMENT |
| CA YOLO | CONWAY RANCH - 813 CONWAY RANCH - CA-103 | 617710 | 08/15/77 | PACIFIC GAS & ELECTRIC CO AND CWOO (SFER) | GAS PURCHASE AGMT |
| CA | /BUENA FE LEASE | — | 5/1/80 | ARCO OIL & GAS CO. | OIL SALES AGMT. |
| CA | /CA - EMPIRE | | 5/1/87 | TEXACO TRADING & TRANSP. , INC. | OIL SALES AGMT. |
| CA | /CA - REEVES | | 11/1/90 | ORYX ENERGY CO. | OIL SALES AGMT. |
| CA | /CA - STATION 31 | | 4/1/90 | TEXACO TRADING & TRANSP., INC. | OIL SALES AGMT. |
| CA | /CA - STATION 31 | | 6/1/88 | C. ITOH & CO. (AMERICA), INC. | OIL SALES AGMT. |
| CA | /CA - STATION 31 | | 9/1/88 | TANNEHILL PETROLEUM CORP. | OIL SALES AGMT. |
| CA | /CA - STATION 36 | | 8/1/85 | TEXACO REFINING & MARKETING , INC. | OIL SALES AGMT. |
| CA | /HYNES STATION | | 3/1/83 | KOCH OIL COMPANY | OIL SALES AGMT. |
| CA | /LONG BEACH, ROSECRANS, SF | | 10/1/90 | UNOCAL CORP. | OIL SALES AGMT. |
| CA | /MIDWAY SUNSET BUENA FE LSE | — | 7/1/88 | ARCO OIL & GAS CO. | OIL SALES AGMT. |
| CA | /MOCAL | — | 5/1/80 | ARCO OIL & GAS CO. | OIL SALES AGMT. |
| CA | /MOCAL | | 12/1/87 | ARCO OIL & GAS CO. | OIL SALES AGMT. |
| CA | /NEWHALL STATION | | 5/1/86 | TEXACO REFINING & MARKETING, INC. | OIL SALES AGMT. |
| CA | /REEVES STATION | | 7/1/84 | THE PERMIAN CORP. | OIL SALES AGMT. |
| CA | /REEVES UNIT | | 11/1/90 | GENERAL ATLANTIC RESOURCES | OIL SALES AGMT. |
| CA | /SESPE L.A.C.T. | | 10/1/85 | KOCH OIL COMPANY | OIL SALES AGMT. |
| CA | /STATION 31 | — | 9/1/88 | ARCO OIL & GAS CO. | OIL SALES AGMT. |
| CA | /STATION 31 | — | 8/1/88 | ARCO OIL & GAS CO. | OIL SALES AGMT. |
| CA | /STATION 36 | | 9/1/86 | TEXACO REFINING & MARKETING, INC. | OIL SALES AGMT. |
| CA KERN | BELRIDGE - 804 BELRIDGE SO - CA-252 | 4971-A | 06/27/85 AMEND 02/26/93 | UNION OIL COMPANY OF CALIFORNIA, AS BUYER, AND PARTNERSHIP PROPERTIES CO (PETRO-LEWIS) AS SELLER | CRUDE OIL PURCHASE CONTRACT |
| CA-KERN | BELRIDGE AREA | CA540500 | 11/28/79 | MOBIL OIL CORPORATION | GAS SALES |
| CA-ORANGE | BREA OLINDA | CA501801 | 8/1/89 | UNION OIL COMPANY OF CALIFORNIA | GAS SALES |
| CA | CA - BETA | S2885 | 9/1/96 | TEXACO TRADING & TRANSP., INC. | OIL SALES AGMT. |
| CA | CA - Brea Olinda Lse | S2538 | 10/1/95 | UNOCAL CORP. | OIL SALES AGMT. |
| CA | CA - Station 31 | S2556 | 12/1/95 | BRAVO ENERGY TRADING N. A. | OIL SALES AGMT. |
| CA | CA - STATION 31 | S2590 | 2/1/96 | EOTT ENERGY CORP. | OIL SALES AGMT. |
| CA | CA - STATION 31 | S2672 | 7/1/96 | EXXON COMPANY, U.S.A. | OIL SALES AGMT. |
| CA | CA - STATION 31 | S2604 | 8/1/96 | WITCO CORPORATION | OIL SALES AGMT. |
| CA | CA - STATION 31 | S1270 | 4/1/87 | PHILLIPS 66 PETROLEUM CO. | OIL SALES AGMT. |
| CA | CA - STATION 31 | S1348 | 10/1/87 | TEXACO TRADING & TRANSP. , INC. | OIL SALES AGMT. |
| CA.   KERN | CA.-MIDWAY S. | 4974A | 05/01/96 | ARCO WESTERN ENERGY AND SANTA FE ENERGY RESOURCES, INC. | WATER DISPOSAL CAPACITY AGREEMENT |
| CA-LOS ANGELES | CALLENDAR #1 | CA541600 | 6/1/82 | SUPERIOR OIL COMPANY | GAS SALES |
| CA- | COALINGA FIELD | TRPC0045 | 7/17/87 | PACIFIC GAS AND ELECRIC COMPANY | TRANSPORTATION |
| NM | EAST OF THOREAU | TRTW0002 | 2/28/92 | TRANSWESTERN PIPELINE | INTER TRANSP |
| CA | KERN RIVER FIELD | TRPG0057 | 8/1/91 | PACIFIC GAS AND ELECTRIC CO. | TRANSPORTATION |
| CA.   KERN | KERN RIVER(may pertain to other fields) | PR-02   CA- LEG. | 8/13/93 | MOJAVE PIPELINE AND SANTA FE ENERGY RESOURCES, INC. | GAS TRANSPORATION IMBALANCES - LETTER AGREEMENT re imbalances |
| CA-FELLOWS | MCKITTRICK FUEL STA. | CA501400 | 2/24/42 | CHEVRON U.S.A. | GAS PURCHASE & COMPRESSION |
| | ROSECRANS | PCCA1021 | 10/01/95 | BREA CANON OIL COMPANY AND SANTA FE ENERGY RESOURCES, INC. | GAS MARKETING AGREEMENT |
| CA KERN | ROSECRANS - 835 ROSECRANS - CA -255 | 617701 | 12/28/81 EFF 1/1/82 | UNION OIL CO & SUN OIL CO. | CRUDE OIL |
| CA LOS ANGELES | ROSECRANS - 835 ROSECRANS - CA -255 | 4832-D | 09/09/94 | BREA CANON OIL CO. AND SANTA FE ENERGY RESOURCES, INC. | GAS MARKETING AGREEMENT |
| CA-LOS ANGELES | ROSECRANS OIL FIELD | CA540800 | 6/14/78 | UNION OIL COMPANY OF CALIFORNIA | GAS SALES |
| CA-LOS ANGELES | ROSECRANS OIL FIELD | CA553800 | 9/1/89 | COOPER AND BRAIN, INC. | GAS PURCHASE |
| CA-LOS ANGELES | ROSECRANS OIL FIELD | CA553900 | 9/1/89 | NANNETTE SUTHERLAND, TRUSTEE | GAS PURCHASE |
| CA-LOS ANGELES | ROSECRANS OIL FIELD | CA554000 | 9/1/89 | BEREN CORPORATION | GAS PURCHASE |
| CA- | S. BELRIDGE | CA540300 | 11/13/86 | UNIVERSITY COGENERATION PARTNERS | GAS PURCHASE |
| CA | S. BELRIDGE FIELD | S1818 | 11/1/90 | UNOCAL CORP. | OIL SALES AGMT. |
| CA-KERN | S. BELRIDGE OIL FIELD | CA555000 | 4/5/90 | UNION OIL COMPANY OF CALIFORNIA | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | PCNM1009 | 5/1/93 | AMOCO ENERGY TRADING CORP | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | GP100600 | 9/1/95 | AMOCO PRODUCTION COMPANY | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | GP101600 | 10/1/96 | ENRON CAPITAL & TRADE CORP. | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | GP100000 | 1/1/96 | COASTAL GAS MARKETING COMPANY | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | GP100400 | 3/1/96 | MOCK RESOURCES, INC. | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | GP100500 | 4/1/96 | PANENERGY GAS SERVICES, INC. | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | GP101100 | 9/1/96 | NATURAL GAS CLEARINGHOUSE | GAS PURCHASE |

to
CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES, INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT. # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| NM-SAN JUAN | SAN JUAN BASIN | GP101200 | 2/1/95 | TEXACO NATURAL GAS, INC. | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | NM677100 | 7/1/95 | NATIONAL GAS & ELECTRIC | GAS SALES |
| NM-SAN JUAN | SAN JUAN BASIN | PCCA1014 | 7/1/95 | NATIONAL GAS & ELECTRIC | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | PCCA1003 | 12/1/92 | CHEVRON U.S.A. INC. | GAS PURCHASE |
| NM-SAN JUAN | SAN JUAN BASIN | TREP0051 | 12/26/95 | EL PASO NATURAL GAS COMPANY | TRANSPORTATION |
| NM | SAN JUAN LATERAL | TRTW0004 | 6/12/92 | TRANSWESTERN PIPELINE | FIRM TRANSP |
| CA | SOUTH MIDWAY | CAS26800 | 3/18/88 | SOUTHERN CALIFORNIA GAS CO. | GAS PURCHASE |
| CA- | THOREAU | TRTW0001 | 4/30/91 | TRANSWESTERN PIPELINE | FIRM TRANSP |
| | TOPOCK, AZ TO KERN, CA | TRMO0005 | 10/19/92 | MOJAVE PIPELINE COMPANY | FIRM TRANSP |
| MT-PORT OF WILD HORSE | U.S. - CANADA BORDER | | 4/11/91 | ALTAMONT GAS TRANSMISSION CO. | TRANSPORTATION |
| MT-PORT OF WILD HORSE | U.S. - CANADA BORDER | | 4/11/91 | ALTAMONT GAS TRANSMISSION CO. | FIRM TRANSP |
| | VARIOUS | GP100700 | 05/01/96 | EL PASO GAS MARKETING COMPANY AND SANTA FE ENERGY RESOURCES, INC. | GAS PURCHASE CONTRACT |
| CA. | VARIOUS AREAS | 002  CA-LEG. | 8/92 | CHEVRON USA AND SANTA FE ENERGY RESOURCES | GAS EXCHANGE |
| CA. | VARIOUS AREAS | 005  CA-LEG. | 9/94 | SO CAL GAS AND SANTA FE ENERGY RESOURCES, INC. | GAS SELECT AGREEMENT (on line gas service & info) |
| CA. | VARIOUS AREAS | 004  CA-LEG. | Aug-83 | SO CAL GAS AND SANTA FE ENERGY RESOURCES, INC. | GAS SERVICE CONTRACT |
| CA-KERN | | CAS01300 | 9/19/32 | CHEVRON U.S.A. | PROCESSING |
| | | CAS43001 | 3/31/88 | TEXACO GAS MARKETING | GAS PURCHASE |
| | | GP100800 | | MERIDIAN OIL TRADING | GAS PURCHASE |
| | | GP101500 | 10/1/96 | VANTUS ENERGY | GAS PURCHASE |
| | | GP101000 | | REDWOOD RESOURCES | GAS PURCHASE |
| | | | 1/7/91 | ALTAMONT GAS TRANSMISSION CANADA | AGREEMENT |
| MT-PORT OF WILD HORSE | | | 11/15/91 | AMOCO CANADA PETROLEUM CO. LTD. | GAS PURCHASE |
| MT-PORT OF WILD HORSE | | | 1/7/92 | NOVA CORPORATION OF ALBERTA | FIRM TRANSP |
| CA | | | 09/25/96 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. | 5201 TRUXTUN, BAKERSFIELD, CA. | PR-01 CA-LEG. | 1/4/91; AMD'D 9/20/96 | COMMERCE DRIVE PARTNERS AND SANTA FE ENERGY RESOURCES, INC. | OFFICE LEASE |
| CA. KERN | BELRIDGE, S. | PU-82 Belridge CA-LEG. | 2/25/95 | GE CAPITAL MODULAR SPACE AND SANTA FE ENERGY RESOURCES, INC. | OFFICE LEASE |
| CA. KERN | MIDWAY | PU-82 Midway CA-LEG. | 7/7/95 | GE CAPITAL MODULAR SPACE AND SANTA FE ENERGY RESOURCES, INC. | OFFICE LEASE |
| CA. KERN | MIDWAY (PREMISES KNOWN AS 12130 MORA DR., UNIT 1) | CA-LEG. | 8/7/96 | O'DONNELL/SANTA FE SPRINGS II AND SANTA FE ENERGY RESOURCES, INC. | OFFICE LEASE |
| CA. LOS ANGELES | ROSECRANS | PR-02 CA-LEG. | 4/1/96; addendum dated 2/17/96 | AVALON BUSINESS INVESTORS AND SANTA FE ENERGY RESOURCES, INC. | OFFICE LEASE |
| CA. | ALL SANTA FE OFFICES | HOU-OFF.SERVICES | 8/15/95 | COPYRIGHT CLEARANCE CENTER, INC. AND SANTA FE RESOURCES, INC. | PHOTO LICENSE RENEWAL  RE 8/15/95 ANNUAL AUTHORIZATIONSERVICE |
| CA. | BAKERSFIELD DIV. OFFICE 5201 Truxtun Ave | PR-02 SF-CA-0215  CA-LEG. | 11/11/93 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | AMENDMENT INSTALLATION PURCHASE OR LEASE AGREEMENT |
| CA. | BAKERSFIELD DIV. OFFICE 5201 Truxtun Ave | PR-02 SF-CA-0199  CA-LEG. | 11/16/89 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX FINANCING STATEMENT |
| CA. | BAKERSFIELD DIV. OFFICE 5201 Truxtun Ave | PR-02 SF-CA-0218  CA-LEG. | 1/23/90 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. | BAKERSFIELD DIV. OFFICE 5201 Truxtun Ave | PR-02 SF-CA-0219  CA-LEG. | 1/23/90 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. | BAKERSFIELD DIV. OFFICE 5201 Truxtun Ave | SFER 0381 CA-LEG. | 4/25/96 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. | BAKERSFIELD DIV. OFFICE 5201 Truxtun Ave | SFCA 0389 CA-LEG. | 4/1/96 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT(xerox copier) |
| CA. KERN | BELRIDGE, S. FIELD OFFICE | 0375  CA-LEG. | 6/17/94 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. | CA-BAKERSFIELD | SFER-0376 | 12/01/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. | CA-BAKERSFIELD | SFER-0381 | 00/28/96 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX-FAX AGREEMENT |
| CA. | CA-MIDWAY DIST. OFF. | | 07/01/96 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | FAX/COPIES AGREEMENT |
| CA. | CALIFORNIA | HOU-PURCHASING | 1/4/1993; AS AMD'D 1/6/93 | MCCULLAUGH LEASING, AS LESSOR, AND SANTA FE ENERGY RESOURCES, INC., AS LESSEE | MASTER LEASE AGRMT. (VEHICLES) |
| CA. | CALIFORNIA | HOU-PURCHASING | 2/12/1996; AMD'D 2/12/96 | ALLIED LEASING COMPANY, AS LESSOR, AND SANTA FE ENERGY RESOURCES, INC., AS LESSEE | LEASE AGREEMENT (FINANCE) (VEHICLES) |

to

CONVEYANCE AND CONTRIBUTION AGREEMENT FROM SANTA FE ENERGY RESOURCES, INC. TO MONTERY RESOURCES,INC.

| ST. & CO. | AREA/PROSPECT NAME | CONT. # | CONT. DATE | CONTRACT PARTIES | TYPE CONTRACT |
|---|---|---|---|---|---|
| CA. | CALIFORNIA | HOU - PURCHASING | 11/22/95; AMD'D 12/1/1995 | NATIONSBANC LEASING CORPORATION, AS LESSOR, AS SANTA FE ENERGY RESOURCES, INC. | MASTER EQUIPMENT LEASE AGREEMENT |
| CA. | CALIFORNIA | HOU - PURCHASING | 6/16/94 | SANTA FE ENERGY RESOURCES, INC., AS CONTRACTOR, AND HOWARD SUPPLY COMPANY, AS CONTRACTEE | CONTRACT WORK AUTHORIZATION RE 7/7/93 MASTER CONTRACT |
| CA. | CALIFORNIA | HOU - PURCHASING | 11/11/94 | SANTA FE ENERGY RESOURCES, INC., AS LESSOR, AND HOWARD SUPPLY COMPANY, AS LESSEE | COMMERCIAL LEASE AND AGREEMENT |
| CA. | CALIFORNIA | HOU-MIS | 3/1/90 | DALTON INTERNATIONAL INC. AND SANTA FE ENERGY RESOURCES, INC. | LEASE AGREEMENT |
| CA. FRESNO | COALINGA FIELD OFFICE | 0374 CA-LEG. | 9/20/94 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. FRESNO | COALINGA FIELD OFFICE | SFER 0379 CA-LEG. | 2/22/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. | COVERS CA., LA., N.M. & TX. OFFICES | HOU-OFF.SERVICES | NO DATE | BROADCAST MUSTIC INC. AND SANTA FE ENERGY RESOURCES, INC. | MUSIC PERFORMANCE AGREEMENT |
| CA. FRESNO | GARDENA FIELD OFFICE | SFER 0377 CA-LEG. | 1/17/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. KERN | KERN FRONT FIELD OFFICE | PR-02 SF-CA-0379 CA-LEG. | 12/15/93 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. KERN | MIDWAY FIELD OFFICE | Xerox Contract SFER 0385 CA-LEG. | 12/5/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | AMENDMENT TO INSTALLMENT PURCHASE OR LEASE AGREEMENT |
| CA. KERN | MIDWAY FIELD OFFICE | PR-02 SF-CA-0213 CA-LEG. | 12/15/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. KERN | MIDWAY FIELD OFFICE | SFER 0379 CA-LEG. | 2/16/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. KERN | MIDWAY FIELD OFFICE | SFER 0387 CA-LEG. | 12/5/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. KERN | MIDWAY WAREHOUSE | SFER 0386 CA-LEG. | 12/5/95 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT |
| CA. ORANGE | OLINDA (BREA) FIELD OFF. | SFCA 0390 CA-LEG. | 4/9/96 | XEROX CORPORATION AND SANTA FE ENERGY RESOURCES, INC. | XEROX ORDER AGREEMENT(xerox copier) |
| CA | | CA- LEG. | 02/01/96 | OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION/AFL-CIO AND SANTA FE ENERGY RESOURCES, INC. | LABOR UNION CONTRACAT |