# IN THE UNITED STATES COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DEVON ENERGY CORPORATION and DEVON ENERGY PRODUCTION COMPANY, L.P., | § § § § § | |
| Plaintiffs, | § | Civil Action No. 4:21-cv-02452 |
| v. | § § | |
| CHEVRON U.S.A., INC., | § § | |
| Defendant. | § § § | |

## CHEVRON'S MOTION *IN LIMINE* TO EXCLUDE DEVON'S INADMISSIBLE EVIDENCE OF DAMAGES

TO THE HONORABLE DAVID HITTNER:

In response to the Court's request during the September 5, 2023 pretrial conference, and in further support of Chevron's notice of high-priority evidentiary issues, Dkt. No. 125, Chevron U.S.A. Inc. submits this motion *in limine* to exclude Devon's exhibits PX050 and PX114 and related evidence. Chevron respectfully would show the Court as follows:

# INTRODUCTION

During the September 5, 2023 pretrial conference, the Court requested briefing from the parties regarding the admissibility of two documents—Plaintiffs' Exhibits 50[1] and 114[2] (PX050 and PX114)—that relate to the potential costs of the decommissioning obligations at issue. 9/5/23 Pretrial Conference Tr. at 140:2-9.

Both exhibits should be excluded because, among other things, they include speculative and highly prejudicial information related to the estimated costs of decommissioning Lease OCS-P 0166. The issue at trial is whether Chevron is required to defend and indemnify Devon—not how much Chevron might be required to pay to do either. That is, the cost of decommissioning the Hogan and Houchin platforms is both not at issue and not relevant. In fact, Devon has not paid any money to decommission the platforms and is not asking the jury to award any specific sum of money from Chevron for those costs. Devon intends to admit these

---

[1] PX050 is an email from Devon's consultant and non-retained expert Roy Hathcock to colleagues at Devon in July 2022, in which he relayed notes from a meeting he attended with ConocoPhillips regarding decommissioning the lease platforms. At the meeting, ConocoPhillips disclosed to the attendees, including Mr. Hathcock, its $303 million cost estimate for decommissioning the lease platforms. Mr. Hathcock had no role in preparing that estimate.

[2] PX114 is an email from Jason Rother, an employee of ConocoPhillips, to employees at Chevron, as well as employees of Devon and its former co-leaseholders of Lease OCS-P 0166, in which ConocoPhillips stated that it had spent about $22.4 million related to the initial phases of decommissioning the lease as of January 2023.

exhibits, potentially others, and testimonial evidence about the cost of decommissioning, including statements by other companies about the costs and estimates for decommissioning the Hogan and Houchin platforms.[3] Under Federal Rules of Evidence 402, 403, and 802, these exhibits are inadmissible. Both exhibits are highly prejudicial to Chevron because they permit Devon to confuse the jury with (1) millions of dollars in decommissioning assessments and (2) costs incurred by others relating to decommissioning.

## ARGUMENT & AUTHORITIES

The Court should exclude PX050 and PX114 and preclude Devon from making any reference to any damages calculations or payments made to date for decommissioning. Both exhibits reference these types of estimates and payments and should be excluded because they are (1) unduly prejudicial to Chevron, (2) irrelevant to the issues in the case, and (3) inadmissible hearsay.

A. **Evidence of the Amount of Potential Decommissioning Costs Is Unduly Prejudicial.**

The risk of unfair prejudice to Chevron, confusion of the issues, and misleading the jury by admitting these exhibits is significant, and it substantially

---

[3] Despite admitting that it is only seeking the amount of its attorneys' fees at trial, Devon confirmed at the pretrial conference that it intends to offer impermissible evidence that the parties are "not fighting over one dollar" to "contextualize . . . the scope and enormity of decommissioning, which this jury needs to know because this is not everyday stuff." 9/5/23 Pretrial Conference Tr. at 47:2-6.

3

outweighs any extremely limited probative value they may have. *See* Fed. R. Evid. 403; *see also infra* Sec. A. Both parties agree—as evidenced by the proposed verdict form, *see* Dkt. No. 88-9—that the jury will be asked to interpret the 1996 Conveyance and Contribution Agreement ("1996 Agreement") and decide the parties' contract dispute. The jury will ***not*** be asked to decide damages associated with decommissioning in the event that it resolves the question of liability in Devon's favor. There is no dispute about this. *See id.* (limiting damages question to attorney's fees).

For these reasons, Devon cannot claim that it intends to offer ConocoPhillips's estimate of future decommissioning costs or its maintenance and monitoring costs borne to date for any admissible purpose. Rather, the reason for putting these estimates into evidence is to use the size of the potential exposure here to improperly influence the jury. Presenting evidence of costs that have not been incurred by Devon—*and that are not being sought by Devon in this litigation*—is akin to presenting evidence of damages in the first stage of a bifurcated trial. The rules of evidence do not permit Devon to admit these sorts of costs estimates as evidence when they have no probative value. *See Japan Cash Mach. Co. v. MEI, Inc.*, 2008 WL 5051245, at *10 (D. Nev. Nov. 20, 2008) (finding it improper for the

jury to consider evidence that relates to issues it will not resolve).[4]

Devon has also demonstrated its willingness to inflate the potential cost of decommissioning the platforms beyond the unconfirmed $303 million estimate provided by ConocoPhillips in PX050. At the September 5 pretrial conference, Devon told the Court that the total liability for decommissioning "is well in excess of [$]300 million currently, and that is going to go up over the next ten years." 9/5/23 Pretrial Conference Tr. at 40:23-24. This not only exaggerates ConocoPhillips's estimate provided to Mr. Hathcock, but it projects an unfounded and undisclosed cost increase over the next decade. As such, it exemplifies the prejudice to Chevron and the jury that will result if Devon is allowed to offer this sort of evidence of potential damages, which is not even an issue the jury will consider or decide.

> **B.     PX050 and PX114 Are Irrelevant to Interpreting the 1996 Agreement.**

Even putting the significant prejudice aside, Devon cannot meet Federal Rule of Evidence 402's relevance standard for the admission of these exhibits. The

---

[4] Devon's use of the estimates is particularly problematic here where Devon will likely only be responsible for a fractional share of the eventual decommissioning costs, which will be shared among Devon, ConocoPhillips, and OXY U.S.A. Inc. At the time Santa Fe, Devon's predecessor, assigned its interest in the lease to Signal Hill, it held only a 33.75% interest in the lease. DTX003 (MMS Approval of Lease Assignments). In response to Chevron's targeted interrogatory, Devon refused to disclose its specific share of the decommissioning costs, referring to a Joint Defense Agreement it entered with ConocoPhillips and OXY. DTX036 (Devon's Second Amend. Answers to Chevron's Second Set of Interrogatories at 8, 15).

contract-related questions that the jury will decide exclusively concern liability. Devon has conceded that it is not asking the jury to award damages for decommissioning costs that have not been incurred, id. at 42:6-13 ("In terms of the specific amount, we're asking for the amount of Devon's attorneys' fees."), and that it has not paid a single cent to decommission the lease platforms to date, id. at 133:7-13 ("Devon hasn't paid it yet. We have held off because we're trying to – here to get them – indemnification."). Therefore, these documents—and any similar attempts to describe the potential cost of decommissioning—will not assist the jury in interpreting the contract and thus are wholly irrelevant.

Under California contract law, extrinsic evidence may be admissible as to the "circumstances surrounding the making of the agreement." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 645 (Cal. 1968); see also *Centigram Argentina, S.A. v. Centigram Inc.*, 60 F. Supp. 2d 1003, 1007 (N.D. Cal. 1999) (permitting extrinsic evidence to determine "whether contract is reasonably susceptible to particular meaning"). When seeking to interpret a contract, a trial court may "receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." But the damages figures contained in PX050 and PX114—from 25 years after the contract was executed—whether speculative or not, have nothing to do with the execution of

the 1996 Agreement and thus cannot provide the sort of context for which California law permits extrinsic evidence.

### C. PX050 and PX114 Constitute Inadmissible Hearsay.

Both PX050 and PX114 also contain inadmissible hearsay under the Federal Rules of Evidence. In PX050, Mr. Hathcock is conveying out-of-court statements—*e.g.*, the damages assessment—made by representatives at ConocoPhillips, which are not subject to any exceptions to the rules against hearsay. In this instance of double hearsay, even if Devon could claim that Mr. Hathcock's email itself is covered by the business records exception, Fed. R. Evid. 803(6), there is no basis whatsoever to admit the statement he is relaying from ConocoPhillips. On the record at the pretrial conference, counsel for Devon suggested that the $303 million number "[was] being offered for a non-hearsay admissible purpose," 9/5/23 Pretrial Conference Tr. at 137:4-7, but failed to provide an explanation for what that purpose might be. And no such explanation exists—PX50 is inadmissible hearsay.

In PX114, Mr. Rother of ConocoPhillips wrote to several recipients "to confirm that current spend by [ConocoPhillips] (through January 2023) is ~$22.4MM." Mr. Rother's out-of-court statement is hearsay that is not subject to any exceptions. Devon's attempt to circumvent its hearsay problem by claiming that every email that somebody at Devon ever receives—including PX114—is a business record, *see* Ex. A (McDaniel Declaration), is not consistent with the law. *In re Oil*

*Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012) (rejecting argument that emails qualify as business records because the company "regularly receive[s] electronic mail as part of daily business activities and that [its] regular practice is to receive and retain such emails").

Nor can the fact that Mr. Hathcock potentially relied on these documents cure the hearsay problem. *See BP Prod. N. Am. Inc. v. J.V. Indus. Companies, Ltd.*, 2010 WL 1708316, at *3 n.9 (S.D. Tex. Apr. 27, 2010) ("While it is true that an expert may review inadmissible documents and other materials, having an expert review a document does not render admissible an otherwise inadmissible report."). Mr. Hathcock testified that his sole source of information about the lease and the decommissioning process, including costs, is ConocoPhillips, which is leading every phase of that process. Hathcock Dep. at 81:12-17, 114:2-5, 113:7-10. Mr. Hathcock has no personal knowledge of these events and issues, and his purported reliance on these documents—including PX114, which was not sent to him—cannot solve the hearsay problem, which renders these documents inadmissible.

## **CONCLUSION**

For the reasons set forth above, the Court should exclude PX50 and PX114 at trial and preclude Devon from introducing any evidence related to the costs of decommissioning Lease OCS-P 0166, including evidence related to estimated total

costs to complete the decommissioning process, as well as evidence of actual costs incurred by others to date.

| | |
|---|---|
| Dated: September 6, 2023 | Respectfully submitted,<br>**DAVIS POLK & WARDWELL LLP**<br><br>By: */s/ James P. Rouhandeh*<br>　　James P. Rouhandeh<br>　　*Admitted pro hac vice*<br>　　New York Bar No. 2211837<br>　　S.D. NY I.D. No. JR-2251<br>450 Lexington Avenue<br>New York, New York 10017<br>Telephone: 212-450-4000<br>Facsimile: 212-701-5800<br>E-mail: rouhandeh@davispolk.com<br>**ATTORNEY IN CHARGE FOR DEFENDANT CHEVRON U.S.A. INC.** |

**OF COUNSEL:**

**DAVIS POLK & WARDWELL LLP**
Micah G. Block
1600 El Camino Real
Menlo Park, California 94025
Telephone: 650-752-2000
Facsimile: 650-752-2111
E-mail: micah.block@davispolk.com

Greg D. Andres
Patrick W. Blakemore
Caroline Stern
Christina A. Costello
Corey M. Meyer
450 Lexington Avenue
New York, New York 10017
Telephone: 212-450-4000
Facsimile: 212-701-5800
E-mail: greg.andres@davispolk.com
E-mail: patrick.blakemore@davispolk.com
E-mail: caroline.stern@davispolk.com
E-mail: christina.costello@davispolk.com
E-mail: corey.meyer@davispolk.com

**HICKS DAVIS WYNN P.C**.
Bryon A. Rice
Texas Bar No. 24065970
S.D. Tex. ID No. 1118643
3555 Timmons Lane, Suite 1000
Houston, Texas 77027
Telephone: 713-518-1635
Facsimile: 713-277-7220
E-mail: brice@hdwlegal.com

## CERTIFICATE OF SERVICE

I certify that on September 6, 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Bryon A. Rice*
Bryon A. Rice

# EXHIBIT A

# IN THE UNITED STATES COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DEVON ENERGY CORPORATION and DEVON ENERGY PRODUCTION COMPANY, L.P., | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 4:21-CV-02452 |
| CHEVRON U.S.A., INC., | § § § | **ORAL ARGUMENT REQUESTED** |
| *Defendant.* | § | |

## DECLARATION OF MARK MCDANIEL REGARDING BUSINESS RECORD TRIAL EXHIBITS

I, Mark McDaniel, state as follows:

1. My name is Mark McDaniel. I am above the age of 18 years and, in all respects, I am capable of making this declaration.

2. The statements contained herein are based upon my personal knowledge, are true and correct, and if called upon to testify I could competently testify thereto.

3. I am an attorney at Devon Energy Corporation and Devon Energy Production Company, L.P. (collectively, "Devon"), and have been at all times relevant to this matter and the facts contained in this declaration.

4. I am a custodian of records of Devon and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

5. Further, attached to this declaration are the following documents from Devon's business records, identified by bates number:

| PX# | Date | Description | Bates Range |
|---|---|---|---|
| 19 | 5/3/2000 | Correspondence between Texaco, Santa Fe, and MMS (May 3-11, 2000) | DEVON_00002278-00002297 |
| 49 | 10/27/2020; 1/7/2021 | Emails between Donald Sands, Roy Hathcock, and Fritz Ory (M&H Consulting) regarding decommissioning costs, other information on Platforms Hogan, Houchin, and Henry | DEVON-00010072-00010078 |
| 50 | 7/28/2022 | Emails between Roy Hathcock, Donald Sands, Mark McDaniel (Devon) and Brian Schmit regarding Carpinteria P&A Workshop notes | DEVON_00009533-00009539 |
| 72 | 10/21/2020 | Letter from BSEE to J. Richels regarding Oil & Gas Lease OCS-P 0166, Platforms Hogan and Houchin | DEVON_00000517-00000520 |
| 104 | 8/18/1999 | Letter from J. Lisle Reed to Signal Hill Service Inc. | DEVON_00002192-00002198 |
| 105 | 7/24/2007 | Letter from E. Aronson to Signal Hill Service Inc. | DEVON_00002415-00002433 |
| 109 | 9/9/2020 | Email from J. Rother to J. Voyles, et al., dated August 18, 2020, regarding Signal Hill Services (OCS Lease P-00166) Carpinteria Field, Update | CHEV_0006592-CHEV_0006593 |
| 114 | 2/9/2023 | Email from J. Rother regarding Spend to Date Update | DEVON_00011444 |

6. The documents identified above relate to the Conveyance and Contribution Agreement that is the subject of this lawsuit. When Devon receives or obtains documents relating to claims that are the subject of pending litigation, they are placed in the legal files maintained by Devon in-house counsel, such as myself, at or near the time they are received. Devon's practice is to adopt such documents as Devon's own business records. Devon has maintained and adopted, as its own business records, the documents identified in Paragraph 5.

7. The documents identified above as PX 19, 49, 50, 72, 104, 105, 109, and 114 are correspondence relating to the Conveyance and Contribution Agreement or the decommissioning of Lease OCS P-0166 that is the subject of this lawsuit. When Devon receives or obtains correspondence relating to claims that are the subject of pending litigation, they are placed in the legal files maintained by Devon in-house counsel, such as myself, at or near the time they are received. Devon's practice is to adopt such correspondence as Devon's own business records. Devon has maintained and adopted, as its own business records, the correspondence identified in this paragraph. Furthermore, the documents identified above as PX72, 104, and 105 are correspondence from federal regulators and are maintained as Devon's business records by Devon's lawyers in the normal course of Devon's business in the manner described above.

8. The foregoing documents referenced in Paragraphs 5–7 above were either a) made at or near the time of each act, event, condition, or opinion set forth or b) received and retained in Devon's custody as Devon's own business records. It is the regular practice of Devon to make or retain these types of records at or near the time of each act, event, condition, or opinion as set forth in the record or as a part of Devon's regular course of business.

9. The foregoing documents referenced in Paragraphs 5–7 above were either a) made by, or from information transmitted by, persons with knowledge of the matters set forth or b) received and maintained by those, such as myself, empowered by Devon to keep custody of such records. It is the regular practice of Devon for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them or be received and maintained by those charged within Devon as responsible for keeping custody of such records.

10. The foregoing documents referenced in Paragraphs 5–7 above were kept in the course of regularly conducted business activity. It is the regular practice of Devon to keep this type of record in the course of regularly conducted business activity.

11. Furthermore, the foregoing documents referenced in Paragraphs 5–7 above are systematically checked by Devon personnel, integrated into Devon's records and relied upon by Devon personnel in Devon's day-to-day operations to further Devon's business—particularly with respect to the conduct of litigation on behalf of Devon. Furthermore, Devon imposes a duty on its employees to make, retain, or rely upon the documents referenced in Paragraphs 5–7 above.

12. The aforementioned documents are the original records or exact duplicates of the original records.

13. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on September 4, 2023.

_____
Mark McDaniel