# IN THE UNITED STATES COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DEVON ENERGY CORPORATION and DEVON ENERGY PRODUCTION COMPANY, L.P., | § § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:21-CV-02452 |
| v. | § § | |
| CHEVRON U.S.A., INC., | § § § | |
| Defendant. | § | |

## DEVON'S BRIEF REGARDING PX050 AND PX114

Pursuant to the Court's request, Devon files this brief concerning the admissibility of (1) the estimated dollar amount it will cost (i.e., $303 million) to decommission the Hogan & Houchin platforms as reflected in PX050 and (2) the actual dollar amount spent on decommissioning through January 2023 (i.e., $22.7 million) as reflected in PX114. Chevron argues that the estimated and actual cost of decommissioning is not relevant.

By sanitizing trial of the cost of decommissioning, Chevron seeks to try this case in a misleading and one-sided vacuum that would prevent the jury from fairly deciding the issues presented. This will strip Devon of its ability to respond to the evidence and arguments Chevron intends to present, the overall context and

1

background of the dispute, and the meaning of the CCA. The cost of decommissioning the Hogan & Houchin platforms is an inherent—and critical—part of this case even though Devon is not seeking a damages award for decommissioning costs that it has not yet paid. Courts routinely allow parties leeway to provide background and context to aid the jury's understanding. *See infra* at 3. Moreover, such evidence directly bears on Devon's declaratory judgment claims seeking a declaration that Chevron will have a duty to indemnify Devon for costs that it incurs in the future related to, *inter alia*, decommissioning.

"Evidence is relevant if it has *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 809 (5th Cir. 2017) (emphasis added). This is a "low bar." *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 740 (5th Cir. 2020). Here, the dollar cost of decommissioning reflected in PX050 and PX114 is relevant for at least two reasons.

*First*, the cost of decommissioning is relevant to providing adequate context for the parties' dispute and to avoid confusing the jury. Chevron has conceded that this case is "about money." (9/6/23 Tr. at 149:9-10). Evidence that provides background and context for the "money" at issue passes the low bar for relevance.[1]

---

[1] If this case occurred in the future after decommissioning is completed, and Devon were seeking damages for the cost of decommissioning, the amount would be relevant. *See Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 29 Cal. App.

Indeed, courts routinely allow parties to provide background and context to aid the jury's understanding. *See, e.g.*, *Nikolova v. Univ. of Texas at Austin*, 2022 WL 757250, at *2 (W.D. Tex. Mar. 11, 2022) (evidence is relevant where it provides "important context to aid the jury in its determination").

Chevron's claim that the cost of decommissioning is wholly irrelevant is belied by Chevron's repeated effort to paint the decommissioning liability as non-existent. For example, Chevron has represented to this Court that it intends to use Devon's statements in a pending appeal of BSEE's order to establish that decommissioning liability *does not exist*. *See, e.g.*, Dkt. 94 (Chevron's Response to MIL) at 3–4 (Relying on Chevron Ex. 24 to establish "Santa Fe understood . . . no decommissioning obligations accrued until a well or platform was shut down or abandoned"); (7/11/23 Tr. at 142:5-17). Similarly, Chevron has made clear that it will attempt to minimize the existence of liability by arguing Devon has not yet paid any money out of its own pockets. (9/5/23 Tr. at 131:21–132:19). Devon is entitled to rebut those assertions with evidence regarding what Devon may be liable for if BSEE ultimately prevails.

---

5th 1, 9 (2018) (discussing breach of contract damages). *A fortiori* the cost of decommissioning is relevant in a declaratory judgment action which allows the court to "settle actual controversies before they *fully* ripen[.]" *Certain Underwriters at Lloyd's London v. A & D Ints.*, Inc., 197 F. Supp. 2d 741, 751 (S.D. Tex. 2002).

What's more, if Chevron introduces evidence of what it calls a non-existent liability and Devon is *not* allowed to introduce evidence of the cost of decommissioning, Devon will be unfairly prejudiced because the jury will have an incomplete and misleading story, and will not understand the full picture of why Devon has not yet paid the operator in charge of decommissioning.[2] Worse still, the jury may impute a negative motive to Devon for refusing to incur costs to decommission without the background for why Devon has not paid, *i.e.*, the liability is $303 million with $22+ million spent to date and Chevron is refusing to step up to the plate and foot the bill. Having a trial about the duty to indemnify a costly obligation, without evidence to describe the cost of the obligation, is tantamount to forcing Devon to fight with one hand tied behind its back.

*Second*, the cost of decommissioning is relevant to interpreting the 1996 Conveyance and Contribution Agreement (CCA). Under California law, "extrinsic

---

[2] One of Chevron's own exhibits (DTX-25) states that "ConocoPhillips, together with OXY and Devon, have entered an agreement with BSEE to fund *costly* monitoring and maintenance" of the Hogan & Houchin platforms. DTX-25 at 4. Devon must be allowed to introduce evidence explaining what "costly" is in this context to avoid the risk of confusion and prejudice to Devon. *See, e.g.*, Cal. Evid. Code Section 356 ("Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party"); *Rosenberg v. Wittenborn*, 178 Cal. App. 2d 846, 852 (1960) (stating that to prevent creating a false impression, "[c]onsiderations of fair play demanded that the portion of the conversation placed in evidence by [one party] be supplemented by the qualifying and enlightening portions of the conversation which gave it a very different complexion than that which the [] segregated passages bore.")

4

evidence may be offered if relevant to prove a meaning to which the language of the instrument is reasonably susceptible" even if an "agreement appears unambiguous on its face." *In re Isbell Records, Inc.*, 774 F.3d 859, 865 (5th Cir. 2014).[3]

Under Section 3.4 of the CCA:

> "Monterey [(Chevron's predecessor)] agree[d] to release, protect, defend, indemnify, and hold harmless Santa Fe [(Devon's predecessor)] . . . from and against all claims, costs, expenses, liabilities (including attorneys' fees . . . ), losses, damages, penalties, and fines relating to or arising out of the subject assets or the assumed liabilities, attributable to periods before or after the effective date . . . ."

PX011 at 8–9. Chevron has made clear that it will make myriad arguments for why Section 3.4 does not apply to decommissioning liabilities related to the Hogan & Houchin platforms. The cost for decommissioning is relevant, however, to rebut at least two of those arguments—that Section 3.4 does not include decommissioning costs because they are not foreseeable, and that decommissioning is not a regulatory and environmental cost, which Chevron's predecessor publicly admitted is covered by Section 3.4.

---

[3] But even when "extrinsic evidence" is admitted, interpretation of a contract is still a question of law for the Court unless the contract is, in fact, reasonably susceptible to more than one interpretation and there is "conflicting extrinsic evidence that requires a credibility determination" and that conflicting extrinsic evidence relates to the underlying facts, not the inferences to be drawn from those underlying facts. *Isbell*, 774 F.3d at 865.

To start, for example, the parties dispute whether the phrase "*all* claims, costs, expenses, liabilities . . .," includes costs related to decommissioning. Devon contends the phrase is so broad it includes *any* claim, cost, expense, or liability. Chevron disagrees and contends that only foreseeable damages are covered. Setting aside that there is no basis in the law to read a foreseeability requirement into the CCA[4], the estimated cost of decommissioning undermines Chevron's position. The fact that decommissioning is a large expense, now estimated to cost $303 million (PX050 at 1), makes it more likely the parties contemplated such an expense at the outset and opted to cover "all" such future expenses. Put differently, it is implausible that the parties, who were sophisticated oil and gas companies, did not realize that erecting massive oil drilling platforms would one day lead to costly abandonment and decommissioning obligations. And the fact that those obligations amount to at least $303 million supports Devon's position.

---

[4] Courts faced with broad indemnification language like that in the CCA have rejected arguments similar to the one Chevron makes. *E.g.*, *E.I. DuPont de Nemours and Co. v. U.S.*, 365 F.3d 1367, 1373 (Fed. Cir. 2004) (rejecting attempt to evade indemnification liability on the basis of foreseeability because CERCLA liability did not exist at the time the contract was executed, and holding that there is "no basis in the law for reading a limitation of foreseeability" into the indemnity clause); *Chevron U.S.A., Inc. v. Bragg Crane & Rigging Co.*, 180 Cal.App.3d 639, 642 n.1, 644 (1986) (rejecting an attempt to evade an indemnity for "all risks," including "any and all loss, damage, injury, liability, and claims," by imposing additional restrictions on the right to indemnification); see also, e.g., *Joshua D. v. Superior Court*, 157 Cal. App. 4th 549, 558 (2007) ("'all' means 'all' and not 'some'").

Next, Chevron's predecessor, Monterey—an original party to the CCA—made contemporaneous statements interpreting the CCA that support Devon's interpretation. Chevron seeks to distance itself from those statements, and the cost of decommissioning undermines Chevron's contrived backtracking effort. For example, in March 1997, Monterey represented that "[p]ursuant to the Contribution Agreement, [Monterey] will agree to indemnify and hold harmless [Santa Fe] from and against . . . <u>any costs or liabilities that may arise in the future that are attributable to laws, rules, or regulations</u> in respect to any property or interest therein located in California." PX012 (Monterey 10-K for year ending Dec. 31, 1996) at 19. Similarly, in September 1996, Monterey represented that "[p]ursuant to the contribution agreement, [Monterey] agreed to indemnify and hold harmless [Santa Fe] from and against <u>any costs incurred in the future relating to environmental liabilities</u> . . . ." PX010 (March 10, 1997 Monterey 10-K) at 49. Both of these public filings were signed by Graham Whaling, who will testify on Friday, September 8.

In other words, Monterey held a contemporaneous belief that it had indemnified Devon for future costs and liabilities related to "laws, rules, or regulations" or "environmental liabilities." Those statements are highly probative because, under California law, "a contract must be interpreted to give effect to the intentions of the parties at the time of contracting," making the parties' contemporaneous interpretation of the contract before a controversy arose the "most

7

reliable" evidence of the contract's meaning. *Kennecott Corp. v. Union Oil Co.*, 196 Cal. App. 3d 1179, 1189 (1987).

Because of the relevance of the cost of decommissioning to providing overall context and background of this dispute, and to shed light on the meaning of the CCA—any unfair prejudice (there is none) cannot outweigh the probative value of PX050 and PX114. After all, "[r]elevant evidence is inherently prejudicial; but it is only *unfair* prejudice, substantially outweighing probative value, that permits exclusion under Rule 403." *United States v. Jenkins*, 126 F. App'x 187, 188 (5th Cir. 2005); *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007). "Rule 403's scope is narrow," its application "must be cautious and sparing," and its "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Fields*, 483 F.3d at 354. Evidence of the cost of decommissioning—that comes directly from ConocoPhillips, the party conducting the day-to-day decommissioning operations (and in the case of PX114, was sent to Chevron too)—is not that type of evidence. Chevron's arguments go to weight not admissibility. Chevron should cross examine Devon's witnesses at trial about its concerns, not seek exclusion under a rule meant to be used "sparing[ly]." *Id.*

*Finally*, and as addressed at length in Devon's response to Chevron's notice of high priority objections (Dkt. 124), PX114, the email from Jason Rother to Mark

8

McDaniel of Devon, Benjamin Sweet of Chevron, and others, stating that over $22 million had been incurred for maintenance and monitoring through January 2023, PX114 is not hearsay because it is an adopted business record of Devon. Fifth Circuit law has long held that "business records produced by another but integrated into the records of the party offering them are admissible." *Willbern v. Bayview Loan Servicing, L.L.C.*, 842 Fed. Appx. 865, 867 (5th Cir. 2021) (quoting *Chilmark Fin. Co. v. Spinks Joint Venture*, 87 F.3d 1312, 1312 (5th Cir. 1996). Here, Devon's custodian of PX114 expressly stated at length in his declaration that it is Devon's practice to adopt PX114 and the other documents listed as Devon's business records and that Devon did so in this case. Dkt. 130 at 14–15.

Moreover, even if PX114 were hearsay, it is admissible for non-hearsay purposes; namely, Devon's understanding of the costs and challenges related to decommissioning. *See* FED R. EVID. 801(c).

Furthermore, as discussed in Docket Number 124, Devon intends to offer Mr. Hathcock as an expert under Rule 702 in the field of decommissioning related to offshore platforms, including the cost of decommissioning. And Rule 703 expressly allows the admission of otherwise inadmissible hearsay if the Court determines that "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." FED. R. EVID. 703.

Similarly, ConocoPhillips' estimate that the total cost of decommissioning will be $303 million (which is reflected in PX050) is contained in a business record created by Roy Hathcock in his work for Devon (as discussed in Docket Number 124). The email itself is non-hearsay based on the McDaniel declaration (discussed above) as well as via testimony Mr. Hathcock can offer during his testimony at trial. And, again, even if the statement in the email is hearsay, it is nevertheless admissible under Rule 703 because it will help the jury evaluate Mr. Hathcock's opinions.

DATED: September 7, 2023

                                          Respectfully submitted,

                                          **SCHIFFER HICKS JOHNSON, PLLC**

                                          */s/ Logan E. Johnson*
                                          Logan E. Johnson
                                          State Bar No. 24013855
                                          SD Tex. Fed. Bar No. 24991
                                          SCHIFFER HICKS JOHNSON, PLLC
                                          700 Louisiana, Suite 2650
                                          Houston, Texas 77002
                                          Tel: 713-357-5150
                                          Fax: 713-357-5160
                                          ljohnson@shjlawfirm.com

                                          ***Attorney in charge for Plaintiffs Devon Energy Production Company, L.P. and Devon Energy Corporation***

## CERTIFICATE OF SERVICE

      I certify that on September 7, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas and to all counsel of record.

*/s/Logan E. Johnson*
Logan E. Johnson